Elizabeth O. Fairbanks *vs.* Edgar E. Barker, Admr.

## Cumberland.   Opinion April 8, 1916.

*Actions against an administrator.   General test as to claim being barred by Statute of Frauds.   Statute of Frauds.   Statute of Limitations.*

Action on account annexed to recover for board, room, washing, mending, care and nursing of defendant's intestate, also for money had and received. *Held:*

1. Under Revised Statutes, chapter 83, section 90, the account is alive and suable until there has been a period of at least six years during which there are no items, either debit or credit.

2. The evidence in this case not sufficient to show original promise on part of the defendant's intestate.

3. An obligation or promise is "original" if the promise is made at the time, or before the debt is created and the credit is given solely to the promissor, but "collateral" if the promise is merely super-added to the promise of another, he remaining primarily liable: No precise form of words is necessary to show an original promise, or conclusive as to the evidence of the parties.

Action of assumpsit on an account annexed brought by plaintiff against defendant, as administrator, to recover certain sums alleged to be due plaintiff from defendant's intestate for room, board, nursing and other items.   Defendant pleaded general issue and brief statement alleging payment of certain of the items charged in the writ and pleaded also the statute of limitations and statute of frauds as to certain other items.   Verdict for plaintiff in sum of $2196.16.   Defendant filed general motion for new trial.   New trial granted, unless within thirty days after filing of rescript, plaintiff remits all the verdict in excess of $1228.40.   Interest on said sum to be allowed from date of writ.   If remittitur be made, motion overruled.   So ordered.

Case stated in opinion.

*Frank H. Haskell,* for plaintiff.

*John B. Kehoe, Jacob H. Berman, and John T. Fagan,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, HALEY, HANSON, PHIL-
BROOK, JJ.

PHILBROOK, J.   This is an action on an account annexed consist-
ing of several charges for which the defendant's intestate in his
lifetime became liable to the plaintiff, as she claims.   The verdict
being for plaintiff, defendant presents the usual motion for a new
trial.   No exceptions are urged.

CHARGE FOR BOARD.

By far the larger portion of the account was made up of charges
for board, room, washing, mending, care and nursing, from January
1, 1906 to August 13, 1913, the latter date being that of Barker's
death.   During the last months of his life he was ill and in need of
considerable care.   It is admitted that Barker lived at plaintiff's
house during the period for which he is charged for board, but the
defendant contends that plaintiff and Barker were living there
together under some arrangement mutually agreeable to both, with-
out expectation of payment other than such as she received from
time to time in the way of money or goods, or Barker's assistance
in running the farm, and probably with the expectation on plaintiff's
part that if she outlived him he would leave her his property since
he had no wife or children.   In support of this contention the
defendant calls attention to the testimony of Albert F. Fairbanks,
a gentleman who married the plaintiff about two months after
Barker's death.   The former wife of Mr. Fairbanks was a sister to
Barker.   According to his testimony, in the summer of 1910, while
his first wife was alive, he and she were visiting Barker at plain-
tiff's house, and upon Barker's being asked why he did not pay
plaintiff for his board he replied that he could pay her any time
when she needed it; that she had plenty of money at that time; that
she did not know the worth of money; that she was not practical,
throwing her money away; that when she got hard up and wanted
it he could let her have it, and, quoting Mr. Fairbank's testimony,
"He said if he outlived her, and if he didn't I won't say that he
said he had made arrangements, or that he was going to, one or the
other, that she could have the income of it; but he wouldn't give
her the money because she would spend it all, she was so liberal.

That is the drift of it. It may not be word for word, but that is the substance of it." As further supporting this contention of the defendant, he introduced testimony to show that Barker had worked on plaintiff's farm, had exchanged work with a neighbor who, in exchange, worked on her farm, had bought fertilizer which, it was claimed, was used on plaintiff's farm, and had bought grain and groceries which were consumed on her farm and in her family. The defendant also laid stress on the nature, time and amount of payment of moneys from Barker to plaintiff, and especially to an entry in plaintiff's own book account showing that on April 6, 1909, she borrowed ninety dollars from Barker and paid him the loan on May 20, 1909, together with five dollars as interest. He urges that if Barker owed plaintiff, as she claims, she would not borrow from him and pay such large interest.

To meet this contention the plaintiff urges that a fair construction of the testimony of Mr. Fairbanks would go far to prove that she was treating him as a boarder. She points out that, at the time of the conversation quoted from Mr. Fairbanks, the former wife of Mr. Fairbanks, a sister of Barker, as we have already said, was present and began the conversation by saying, "Frank, Lizzie tells me that you haven't paid her any board for a long time, and that if she says anything to you about it you get mad. Why don't you pay?" In the middle of April, 1909, apparently about the time of the borrowed money referred to, William M. Ross, a nephew of the plaintiff, was at the Fairbanks house, in the presence of plaintiff and Barker, and testified that "she was telling how much expense she had to go to lately and she said she would be all right if Mr. Barker would pay her. And then she asked him and says, 'Won't you pay me, Frank?' And he says, 'I will make it all right; that is all right,' he says." In the fall of 1912, Miss Eva B. Crockett heard plaintiff ask Barker for money, and on being told he didn't have it, the plaintiff said, "Well, Frank, I should think you might pay me something, some money." The same witness testified to hearing plaintiff ask Barker for money during the following winter and his reply again was that he didn't have it. A few moments afterward Barker gave some money to one Johnson and the plaintiff then said "I should think you might let me have some money, you

owe it to me." To this the witness says Barker did not make much reply but acted as though he didn't like it. The plaintiff also presented her account book, accompanied by her suppletory oath, containing charges against the defendant's intestate for the periods and amounts which appeared in the account annexed to the writ. The defendant argues that this book contains strong internal evidence that the charges are not genuine. Under proper instruction from the court it became a question of fact for the jury to determine whether the book was or was not genuine. No exceptions to such instruction are here presented and we must assume that the instruction given was correct. The jury must have favorably entertained the plaintiff's claim as to the book and we are not convinced that they were so manifestly in error upon this element in the case as to require us to disturb the verdict so far as it depends upon this account book. From all this testimony and all other evidential facts in the case from which inferences may be properly drawn, the court is of opinion that the jury was justified in believing that Barker was living in the plaintiff's home with an expectation and understanding on her part that he was to pay board, and on his part that he was to so pay. The rate of board, if any were due, was not seriously questioned and may be considered fair and reasonable.

STATUTE OF LIMITATIONS.

The defendant further contends that the charges for board prior to August 12, 1907, are barred by the statute of limitations. Upon the account filed in the probate court, a copy of which was attached to the writ, no credits appeared, but before going to trial the plaintiff was allowed to amend her account by adding credits of cash payments in January, March, May, August and December in the year 1906, and like payments in January, April, September and December in the year 1907. If these payments were actually made then under the statute, R. S., chap. 83, sect. 90, the entire account is unaffected by the statute of limitations, for "Until there has been a period of at least six years during which there are no items, either debit or credit, the account is alive and suable." *Rogers* v. *Davis,* 103 Maine, 405. The only testimony as to these particular payments is found in plaintiff's book account, to which we have already alluded as having been submitted to and considered by the

jury. As to their finding, whatever might have been the finding by this court as a matter of primal impression, we must hold that we are not convinced of such manifest error as to require us to set that finding aside.

STATUTE OF FRAUDS.

Charges for board, room, laundry and stabling of horses for Leon L. Jordan, which plaintiff says Barker promised to pay, the defendant says are barred by the statute of frauds. It appears from the testimony that Jordan, a colored man, was a more or less intimate friend of Barker's and was in some way associated with him in certain trades and deals. No contention is raised as to the fact that Jordan boarded with plaintiff during the time charged for, nor was there contention as to the rate charged. The same may be said as to stabling of Jordan's horse. As to whether Barker was an original promisor to pay Jordan's bill, and so considered himself, the plaintiff calls attention to the fact that Jordan came there November 20, 1911, and after he had been there two or three weeks, according to the testimony of Charles H. Skillin, apparently a disinterested witness, the plaintiff complained to Barker, saying she could not board Jordan any longer and did not want him around there. Whereupon Barker said "I will pay his board," and from that time, somewhere in November or December, 1911, to May 13, 1913, Jordan continued to board with plaintiff, paying nothing on his own account. An exhibit was also introduced, dated June 2, 1913, some two weeks after Jordan left plaintiff's house, in the hand writing of Barker and in the form of a bill in which Barker charges Jordan for boarding him and stabling his horse during the time set out in plaintiff's account. It is admitted that Barker left this bill with an attorney for collection against Jordan. Not as showing an original promise, but as confirmatory of that theory, Mrs. Crockett testified that after Jordan went away plaintiff asked Barker who was to pay Jordan's unpaid bill and the reply was that he would. On the other hand the defendant calls attention to the further testimony of Mrs. Crockett, who says that after Jordan had left plaintiff's home as a boarder "she was kind of fretty about his board and at last says 'I would like to know how I am going to get my pay out of this' and he says 'Well, if you don't get it any

other way, I will pay it.'" From this the defendant argues that no original promise had been made by Barker to pay Jordan's board, but that if any promise was made it was a collateral one and so within the statute of frauds and void. A significant piece of testimony is found in the plaintiff's account book where is to be found an account charging Jordan with his board and stabling down to the day of his final departure.

"The provision of the statute of frauds requiring a promise to answer for the debt, default, or miscarriage of another to be in writing in order to fix liability on the promisor, has been a fruitful source of litigation. The general rule, of course, is well recognized that it is a collateral and not an original promise that is within the statute. It is well understood, also, that the obligation is original if the promise is made at the time or before the debt is created and the credit is given solely to the promisor, but collateral if the promise is merely super-added to the promise of another to pay the debt, he remaining primarily liable." . . . "No precise form of words is necessary to show an original promise, or conclusive as to the intention of the parties." Note to *Security Bank Note Co.* v. *Shrader, Ann. Cas.,* 1914, A, p. 490, and cases there cited. In *Reed* v. *Holcomb,* 31 Conn., 360, the court says that in cases difficult to determine "courts must rely upon the circumstances of each particular case, and its general features, in order to ascertain the intention of the parties, and how they viewed it, where it is doubtful whether it was a contract of suretyship or guaranty, or an original undertaking." Our own court in *Doyle* v. *White,* 26 Maine, 341, says that the test to decide whether one promising is an original debtor or a guarantor is whether the credit was given to the person receiving the goods. The account book, upon which plaintiff confidently relies to prove her charge against the defendant for Barker's board, with equal force shows that she continued to charge Jordan and not Barker, for Jordan's board down to the time of his departure. Would she have done this if credit had been primarily given to Barker for Jordan's board during all those months? If Barker was slow about paying his own board would the plaintiff take him as paymaster for Jordan also? If she had given credit to Barker, and he was as able financially at last to pay as counsel says she knew him to be, why was she "fretty"

after Jordan went away, and why did she say that "I would like to know how I am going to get my pay out of this?" While it is true, as a general rule, that the question as to whether the promise is original or collateral is one of fact for the jury to determine, yet from a careful study of all the testimony we are of opinion that there was no promise to pay Jordan's board which was legally binding upon Barker or upon his estate.

The other charges in plaintiff's account, except certain small ones which the court instructed the jury could not be considered, seem to be sufficiently sustained by the evidence.

PAYMENT.

The defendant stoutly claims as a final defense that whatever the charges may be which plaintiff has against the estate, they were wholly or largely paid in the lifetime of Barker, and that at best the verdict of the jury was greatly in excess of what is lawfully due the plaintiff. Exclusive of interest the total bill of the plaintiff was two thousand two hundred twenty-nine dollars and ninety cents. With interest the bill amounts to two thousand three hundred eighty-nine dollars and seventy-one cents. The verdict was for two thousand one hundred ninety-six dollars and sixteen cents. The defendant shows orders on the Portland Savings Bank, amounting to $630.00 drawn payable to the plaintiff and while they do not bear her endorsement yet the teller of the bank testifies that the money drawn on them was paid to her. He also shows orders on Maine Savings Bank, amounting to $555.00 drawn payable to the plaintiff and bearing her endorsement. He also shows a check on Casco National Bank, amounting to $25.00, drawn payable to the plaintiff and bearing her endorsement. The defendant claims that these several amounts, the credits of $60.00 given on her bill, Jordan's board amounting to $248.50, together with the small items before referred to, should all be deducted from plaintiff's account. As to the orders drawn on the two Savings banks, the plaintiff claims that the regular employment of Barker as station agent for the Grand Trunk Railway prevented him from visiting the banks during banking hours and that these orders were given to the defendant in order that she might draw the money and deposit the same to the credit of Barker in the

Casco National Bank. Her counsel argues that Barker's deposit in each Savings bank had reached the sum of two thousand dollars, the limit under the statute on which such banks could pay interest, and that these orders corresponded in amount to the accrued interest. Hence he argues that she only acted as his agent in drawing and depositing the money represented by these orders. In support of this argument attention is called to the fact that in many instances there was deposited the same amount or approximately the same in the Casco National Bank as was drawn from the Savings banks, and that the date of drawing and that of deposit was the same in many instances. As to the Portland Savings Bank orders this argument holds true as to seven but as to the other seven there is no deposit in the Casco Bank to correspond with orders drawn on the Savings bank. As to the Maine Savings Bank orders the argument holds true as to seven but not as to the other seven. In other words the testimony shows that the plaintiff drew $385.00 from the Portland Savings Bank and $275.00 from the Maine Savings Bank which she has not accounted for. Through argument of counsel, she says that as agent she delivered these sums, or paid them to Barker, her principal. These sums having been shown to be in her possession if she would relieve herself from responsibility upon the ground of payment then the burden is upon her to show such payment. This principle is too elementary to require citation of authorities. There is no direct evidence to prove her contention as to payment of these sums to Barker or deposit to Barker's credit, and the presumption upon which she leans, namely that she deposited to his credit some of the proceeds of orders, does not satisfy the burden laid upon her.

We therefore deduct from the plaintiff's bill

| | |
|---|---|
| Amount drawn from Portland Savings Bank and not accounted for | $385.00 |
| Amount drawn from Maine Savings Bank and not accounted for | 275.00 |
| Check on Casco National Bank | 25.00 |
| Credits on amended bill | 60.00 |
| Jordan's board | 248.50 |
| Small items, teams, etc. | 8.00 |
| | $1,001.50 |

Total charges without interest............  $2,229.90
Deductions to be made.................   1,001.50
                                         ──────────
  Balance  ...........................  $1,228.40

As to claims for grain and fertilizer furnished, labor performed and other minor claims made by defendant, we leave them without comment as within the undisturbed province of the jury.

The entry will be,

New trial granted unless within thirty days after filing of rescript plaintiff remits all the verdict in excess of $1228.40. Interest on said sum to be allowed from date of writ. If remittitur be made, motion overruled.