BLAKESLEE, PERRIN & DARLING v. OCEAN ACCIDENT & GUARANTEE CORPORATION, Limited.

(Supreme Court, Appellate Division, Fourth Department. March 3, 1915.)

INSURANCE (§ 171*)—CREDIT INSURANCE—CONTRACT—CONSTRUCTION.

A credit insurance policy, issued by defendant to plaintiff, insured the latter against loss to an amount not exceeding $5,000 in excess of the loss to be borne by insured of one-half of 1 per cent., in no event less than $750, on gross sales up to $200,000 and nine-twentieths of 1 per cent. on gross sales in excess of $200,000, but no account against a single debtor was covered to an amount greater than $2,000. It was further provided: "From the net loss thus ascertained is to be deducted the initial or own loss borne by the guaranteed, and the remainder, if any, not exceeding the limit of the guaranty, is to be the amount due the guaranteed under this contract." To the main contract a rider was attached, providing for the increase of the single account limit to $3,000, and on condition that the insured's own loss of one-half of 1 per cent., being not less than $750, "shall be increased by such sum as will equal one-half of the difference between the original single account limit as above specified and the largest single account reported in excess thereof." Held that, for the total loss of an account of $3,869.08, the first initial or own loss was $1,555.23, one-half of 1 per cent. of all sales under $200,000 plus $500, the added loss to be borne by the insured under the rider the difference between the two loss limits of $2,000 and $3,000, making judgment for the plaintiff for $2,316.85 proper.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 355–357; Dec. Dig. § 171.*]

Submission of controversy under Code Civ. Proc. § 1279, between Blakeslee, Perrin & Darling and the Ocean Accident & Guarantee Corporation, Limited. Judgment directed for plaintiff for $2,316.85.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

H. D. Blakeslee, Jr., of Buffalo, for plaintiffs.
Wm. Burnett Wright, Jr., of Buffalo, for defendant.

LAMBERT, J.   This action is brought upon a contract for so-called credit insurance.   The plaintiffs are engaged in the hardwood lumber business at Buffalo, N. Y., and the defendant, so far as appears, is engaged in the business of insuring credits.   On October 6, 1911, in consideration of $275 premium paid by the plaintiffs, the defendant issued to plaintiffs a certain insurance policy whereby, among other things, it guaranteed the plaintiffs—

"against actual loss to an amount not exceeding five thousand dollars ($5,000.00) on such covered amounts as may be proved under the terms, conditions, and limitations of this contract, which the guaranteed may lose on bona fide sales, shipments, and delivery of merchandise   *   *   *   . made in the usual course of the guaranteed's business of hardwood lumber, between the 1st day of December, 1911, and the 30th day of November, 1912, both dates inclusive, in excess of the initial or own loss to be borne by the guaranteed, being one-half of 1 per cent., but in no event to be less than seven hundred and fifty dollars ($750.00) on the gross aggregate amount of all the guaranteed sales and shipments up to two hundred thousand dollars ($200,000.00), and nine-twentieths of 1 per cent. on gross sales and shipments, if in excess of two hundred thousand dollars ($200,000.00) during that period."

The contract further provided that the amount of loss to be claimed by the guaranteed under the contract should be limited by the conditions and requirements of the contract.   Under the heading "Coverage of Accounts" it was stipulated:

"But no account against any one debtor shall be covered for more than two thousand dollars ($2,000.00).   These limits shall apply to the amount which the debtor owes the guaranteed at the time of insolvency."

There are many further requirements and conditions in this contract relating to the class of accounts covered by the policy and the manner of applying salvage upon such accounts between insurer and the assured.   A scheme is presented for the prorating of such salvage and the ascertainment of the real net loss, and then follows this provision:

"From the net loss thus ascertained is to be deducted the initial or own loss to be borne by the guaranteed, and the remainder, if any, not exceeding the limit of the guaranty, is to be the amount due the guaranteed under this contract."

To such contract there were affixed some three several riders, but this controversy presents questions only as to rider No. 2.   The conditions of this rider are as follows:

"In the event of the insolvency of any individual debtors coming within the terms and conditions of this contract, owing the guaranteed at the date of insolvency in excess of the $2,000.00 single account limit mentioned in the body of this contract, such excess, not exceeding $1,000.00 (thereby increasing the single account limit to $3,000.00), shall also be taken into calculation of losses under this contract, subject to the stipulated percentage of capital rating and all other terms and conditions of the contract; in that event, however, the guaranteed's initial or own loss of one-half of 1 per cent. not being less than $750.00 as provided for in the body of this contract shall be increased by such

sum as will equal one-half of the difference between the original single account limit as above specified and the largest single account reported in excess thereof, within the limit above specified. All the terms and conditions of the contract to remain in force."

Within the term of this contract the assured suffered a total loss upon an account owing by one Gouveneur E. Smith & Co., to the amount of $3,869.08, upon which account there was no salvage. It is conceded that all the preliminary requirements on the part of the assured have been fully met, and the controversy presented is merely as to the amount which the defendant is liable to pay under this contract on account of such loss. The parties agree that the first initial or own loss provided for in the contract amounts to the sum of $1,-055.23. They differ as to the amount of additional or own loss provided for by rider No. 2, and further differ as to whether such total initial or own loss is to be deducted from the amount of the Smith claim, to wit, $3,869.08, or from the $3,000 limit of liability prescribed by the contract as enlarged by rider No. 2. These two questions are all those presented by this record.

The general scheme of the contract of insurance does not admit of much doubt. Before the addition of rider No. 2, the company had apparently thereby agreed to pay such loss as the assured should suffer upon poor accounts of the prescribed character and rating, up to the sum of $5,000, and limited only by the special provision relative to losses upon a single account, whereby it stipulated that it should not be liable upon any one account in excess of the sum of $2,000. In any event the assured obligated themselves to stand all loss arising in connection with their business, up to a specified percentage upon their total business, and this the assured covenanted to bear before any liability arose against the defendant.

In so far as liability of the defendant is concerned, it seems equally clear that rider No. 2 merely increased defendant's liability upon each single account from $2,000 to $3,000, and in that particular leaving the main contract otherwise unchanged. Such conception of the structure of this contract is borne out by the express provision, above quoted, that from the net loss was to be first deducted the initial or own loss, borne by the guaranteed, and that the remainder, not exceeding the limit prescribed, was the amount of the liability of the defendant. It seems clear, therefore, that the deductions by way of initial or own loss, both under the main contract and under rider No. 2, are to be deducted, not from the $3,000 limit of liability, but from the amount of loss sustained by the assured on the single account, and that the defendant is to be liable for the difference up to the sum of $3,000.

The more serious question arises as to the additional initial loss provided for in rider No. 2. It will be noticed that this additional initial loss is therein prescribed to be one-half the difference between the original "single account limit as above specified, and the largest single account reported in excess thereof, within the limit above specified." The construction of this phraseology turns upon the meaning of the two expressions "original single account limit" and "largest

single account reported in excess thereof within the limit above specified."

The defendant contends that the expression "original single account limit" refers clearly to the $2,000 limit of liability prescribed under the original contract, and in that connection calls attention to the fact that rider No. 2 deals exclusively with single account losses. It is further pointed out that in the same rider reference is made to "the $2,000 single account limit mentioned in the body of this contract." It concludes that necessarily, therefore, the original single account limit referred to is the $2,000 limit originally in the contract and again referred to in this rider. Defendant further contends that the reference to the largest single account reported within the limit above specified must necessarily refer to the $3,000 increased limit, and that the largest account that could be reported within that limit would be $3,-000, and the defendant assumes that, the account in question having exceeded that limit, the computation provided for by this rider as an additional initial loss must necessarily be half of the difference between $2,000 upon the one hand and $3,000 upon the other, giving a result of $500 to be added to the first initial loss.

The plaintiff suggests the expression "original single account limit" does not refer to the $2,000, but refers to such an account as, after deducting the first initial loss, will leave the company liable for the full limit of $2,000; in other words, that in this instance the original single account limit would be the sum of $2,000 plus the first initial loss of $1,055.23, or $3,055.23. The plaintiff upon the same reasoning construes the reference to the "largest single account reported in excess thereof within the limit above specified" to refer, not to the sum of $3,000, but to an account which will leave the company liable for just $3,000 after deducting the first initial loss to be borne by the assured. Upon plaintiff's construction of the latter provisions of rider No. 2 the additional initial loss to be borne by assured amounts to $406.93.

Again referring to rider No. 2, the initial or own loss, provided in the original contract, was increased by—

"one-half of the difference between the *original* single account limit as above specified ($2,000), and the largest single account reported in excess thereof, *within the limit above specified* ($3,000)." (The underscoring and figures in parentheses are mine.)

It seems to me reasonably clear that the added initial or own loss to be deducted, if we give effect to the underscored words above quoted, must mean just what the rider reads, viz., the difference between the original single account limit in the rider specified, which certainly was $2,000, and the largest single account reported in excess thereof, within the limit specified in the rider, which was $3,000. If I am right, the initial or own loss of nine-twentieths of 1 per cent. on gross sales and shipments made by plaintiff during the year, which initial loss concededly amounted to $1,055.23, was by rider No. 2 increased by $500; that being one-half the difference between $2,000 and $3,-000.

This view leads to the holding in this case that the additional initial loss provided for by rider No. 2 amounts to $500. This sum is to be

added to the first initial loss of $1,055.23, making the sum of $1,555.-
23, total initial loss to be borne by the assured. This sum is to be
deducted from the amount of the loss of $3,869.08, leaving the amount
of liability of the defendant $2,313.85. This sum is within the lia-
bility limit of $3,000, and hence plaintiff should have judgment for
that amount, with interest thereon from February 23, 1912, together
with the costs of the submission.

Judgment directed for the plaintiff upon the submission for the sum
of $2,316.85, with interest and with costs. All concur, except FOOTE,
J., not sitting.