BERT C. HURD
*vs.*
MAINE MUTUAL FIRE INSURANCE COMPANY.

Androscoggin.   Opinion, July 27, 1942.

*Morris Greenberg,*

*Wilfred A. Hay,* for the plaintiff.

*Pattangall, Goodspeed & Williamson,* for the defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

WORSTER, J.   On motion and exceptions by the defendant.

This is an action of assumpsit against a domestic mutual assessment fire insurance company, on an alleged contract to insure against loss by fire or lightning, where no policy had been issued.

Verdict was rendered for the plaintiff in the sum of $2,220. No question is raised as to the proof of loss, or the amount of the verdict.

The motion for a new trial and the exceptions to the refusal to direct a verdict for the defendant present the same question and will be considered together.

It appears that on August 14, 1939, the plaintiff, a resident of Webster Plantation, made a written application to the defendant, through Mr. Campbell, its agent at Kingman, for insurance for a term of three years from said date, against loss by fire or lightning, on the plaintiff's dwelling house, ell, shed and furniture, all of which is hereinafter, for the sake of brevity, called property. The application and the assessment note, with authority to the defendant's secretary to fill the blanks in the note, were both signed by the plaintiff, and were mailed that day by Mr. Campbell to the defendant, at Lisbon Falls, where it has its home office.

The property was burned August 17, 1939. The application was not received by the defendant at its home office until

August 18, 1939, when it was rejected, and so no written policy covering this property was ever issued to the plaintiff.

It is the contention of the plaintiff, briefly stated, that the defendant, through its agent, Campbell, orally insured said property against loss by fire or lightning, from the time the application was signed until such time as the plaintiff should be notified by the defendant that it had accepted or rejected the application. The defendant denies that Campbell so covered the property with temporary insurance, and, going further, it contends that even if he did make such a contract, it is not binding on the defendant. Although there are several counts in the writ, yet apparently the case was in fact tried below on the issues just stated.

As a general rule, in the absence of statute or charter provision to the contrary, a contract for insurance may be made orally, even although the statute or charter expressly provides that the policies shall be signed by certain designated officers. *Walker* v. *Metropolitan Insurance Company*, 56 Me., 371; See, also, *The City of Davenport* v. *The Peoria Marine and Fire Insurance Company*, 17 Iowa, 276, 284.

It is provided in one of the defendant's bylaws that

"The conditions of the policy or contract between this Company and the assured shall consist of the By-Laws of the Company, the application for insurance, the Maine Standard Policy and all riders and endorsements attached or detached."

Oral contracts are plainly not included in this bylaw. "Or" is used in the sense of "to wit," and the word "contract" is only interpretive or expository of the word "policy" and means the same thing. *Commonwealth* v. *Grey*, 2 Gray (Mass.), 501, 502, 61 Am. Dec., 476; *The People ex rel.* v. *Nordheim*, 99 Ill., 553, 560; *Blumenthal* v. *Berkshire Life Ins. Co.*, 134 Mich., 216, 96 N. W., 17, 18; *Bryan* v. *Menefee*, 21 Okla., 1, 95 P., 471, 475.

And so that bylaw did not deprive the defendant of its common law right of making an oral contract of insurance, any

more than was the Metropolitan Insurance Company (56 Maine, 371, supra) deprived of that right by the statute which provided that "all policies of insurance shall be signed" in a certain manner by certain designated officers. Neither that by-law nor that statute were concerned with oral contracts of temporary insurance, but only with formal policies of insurance.

The mere fact that an application was made for a policy of fire insurance, does not preclude the applicant from showing that at the time he signed the application he was temporarily insured pending acceptance or rejection of his application. *Koivisto* v. *Bankers' & Merchants' Fire Ins. Co.*, 148 Minn., 255, 181 N.W., 580; *Nertney* v. *National Fire Ins. Co.*, 199 Iowa, 1358, 203 N.W., 826.

And the same rule applies in mutual insurance cases, in the absence of any statutory or charter provision to the contrary. *Brown* v. *Franklin Mutual Fire Insurance Company*, 165 Mass., 565, 43 N. E., 512, 52 Am. St. Rep., 534; *Zell* v. *Herman Farmers' Mut. Ins. Co.*, 75 Wis., 521, 44 N.W., 828.

Whether or not an oral contract for temporary insurance was made, was a question of fact for the jury (1 Cooley's Briefs on Insurance, page 560) and, since such contracts are usually of a very informal nature (32 C. J., page 1100) all of the facts and surrounding circumstances must be taken into consideration in determining that question.

The record here discloses that Mr. Campbell had been representing mutual fire insurance companies for about thirty years. At the time in question he was, and previous thereto had been, an agent of the defendant company. As such agent he was not intrusted with policy blanks to be filled out and delivered but was furnished by the defendant with application forms and assessment note forms, to be forwarded by him to the defendant for approval or rejection when signed by the applicant. Mr. Campbell was also agent of the York Mutual, in which the plaintiff's barn was insured, and of the Oxford Mutual, a Grange company, in which the plaintiff had been carrying in-

surance on his dwelling house. That insurance expired August 10, 1939, and Campbell, who had been doing the plaintiff's insurance business for quite a number of years, was instructed by the latter to renew his policy in the Oxford Mutual, but that company refused to renew it because the plaintiff was not then a Granger in good standing, which is required of all persons insured in that company, and Campbell so notified the plaintiff. Thereupon the plaintiff went at once to see Campbell, to obtain other insurance on the house, which Campbell knew was then uninsured.

There is a sharp conflict in the testimony as to what was said at that interview. Mr. Campbell claims that the plaintiff sat near him while the answers to the questions in the application were typed by Campbell. This is denied by the plaintiff and his son. They testify, in substance, that the son drove the plaintiff into Campbell's dooryard in an automobile; that the plaintiff then had a broken leg, which was in a cast, and that he did not get out of the car; that Campbell came up to the car and talked with the plaintiff; that they agreed the risk should be placed with the defendant company, and, thereupon, Campbell went into the house for an application which he afterward brought out to the plaintiff, having already typed in the required answers. The plaintiff says that he was not then wearing his glasses, which he was accustomed to wear; that he did not read the papers, but signed them as directed by Campbell, and passed them back to him. With reference to that occasion, the plaintiff testified:

"... When I passed him back the application, I passed him the application and asked him what there was to do, and he says, 'It is all done now.' I says, 'When am I covered?' He says, 'Just as soon as you sign that, and I will take it now and put it in the post-office.'"

While neither the phrase "temporary insurance" nor "insurance pending decision on the application" nor preliminary insurance" was used, yet the significant word "covered" was

used. And whenever that word is used in the fire insurance business, to describe a factual condition, as distinguished from a mere expression of opinion, it means that the property described is temporarily insured for a reasonable length of time, according to the terms of policies usually issued on such property, until the applicant is notified of the rejection of his application or the acceptance thereof followed by delivery of a proper policy. See 32 C. J., page 1101; *McQuaid* v. *Aetna Insurance Company*, 226 Mass., 281, 284, 115 N. E., 428. See, also, *Barrette* v. *Casualty Co. of America*, 79 N. H., 59, 104 A., 126; *Michigan Idaho Lumber Co.* v. *Northern Fire & Marine Ins. Co.*, 35 N. D., 244, 160 N.W., 130.

That temporary insurance, however, would terminate upon the delivery and acceptance of the policy applied for. *Carleton* v. *Patrons' Androscoggin Mutual Fire Insurance Company*, 109 Me., 79, 82 A., 649.

Whether the word "covered" was used in a conversation relative to fire insurance to express the fact that the applicant was then temporarily insured, or only as an expression of the speaker's opinion, is a question of fact for the jury. It makes no difference whether the word was used by the insurance agent, or was used by the applicant and assented to by the agent.

But Campbell denies that anything was said about being "covered," and it was for the jury to say whether that word was used or not. If it was used, then it was for the jury to decide whether the word "covered" was used to assert or state the fact that the property specifically described in the application was then insured against loss by fire or lightning for the amounts stated in the application, until the applicant was notified by the insurance company that the application was rejected, or accepted and policy delivered. See *Koivisto* v. *Bankers' & Merchants' Fire Ins. Co.*, supra; *Nertney* v. *National Fire Ins. Co.*, supra.

The distinction above made was not considered in *Allen* v. *Massachusetts Mutual Accident Association*, 167 Mass., 18, 44 N. E., 1053, relied on by the defendant. Moreover, the

court was not there considering fire insurance or the effect of temporary coverage pending delivery of the policy, which the courts of Massachusetts recognize may lawfully be done. See *Brown* v. *Franklin Mutual Fire Insurance Company*, supra; *McQuaid* v. *Aetna Insurance Company*, supra.

But the defendant claims that if Campbell did purport to then cover said property with temporary insurance pending the defendant's decision on the application, yet there can be no recovery here, even if Campbell had authority to make such a contract, for the reason that that undertaking was not supported by any consideration. That contention cannot be sustained.

The plaintiff testified, relative to his conversation with Campbell, as follows: ·

"And I asked him afterwards when I should pay, and he said, 'As soon as I receive the policy they would send it and send the bill and I could pay him or pay the company and they would return his fee to him.' "

In those circumstances, the jury could have found an implied promise on the part of the plaintiff to pay all reasonable charges for such insurance coverage. See *Walker* v. *Metropolitan Insurance Company*, supra.

Moreover, the plaintiff had signed and delivered to Campbell an assessment note to be used by the defendant if it should accept the risk and issue the policy applied for. That note contained the plaintiff's promise to pay his assessments, which take the place of the premiums charged by stock companies. And a promise to pay the premium upon delivery of the policy, or the assessments which may be made on an assessment policy, if and when issued, is a sufficient consideration to support the undertaking of an insurance company, through its agent, in covering the designated property with temporary insurance pending decision on the application. *J. C. Smith etc. Co.* v. *Prussian Nat. Ins. Co.*, 68 N. J. L., 674, 54 A., 458; *Nertney* v. *National Fire Ins. Co.*, supra.

This is especially so where, as here, it may be fairly inferred that the applicant relied on such temporary insurance, and did not seek insurance elsewhere. *Nord Deutsche Ins. Co.* v. *Hart,* 230 F., 809; *Massachusetts Bonding & Ins. Co.* v. *R. E. Parsons Electric Co.,* 61 F., 2d, 264, 92 A. L. R., 218.

Furthermore, it does not appear from this record that the assessment note signed by the plaintiff and payable to the defendant has ever been returned by it.

The defendant, contending further, argues that Campbell had no authority to bind the defendant by such a contract for temporary insurance, and says that the plaintiff was so warned in the application. It was there stated that:

"This application is binding only on the approval of the Home Office."

In *Koivisto* v. *Bankers' & Merchants' Fire Ins. Co.,* supra, the application for insurance for three years contained a clause to the effect that the application was subject to the approval of defendant's secretary or general agent, yet the court held that the defendant was bound by a contract for temporary insurance pending decision on the application, made by a local soliciting agent.

In that case, as in the case at bar, it was the practice of the insurance company to date back its policies when issued, to the date of the application, and the court said:

"We are of the opinion that defendant's practice in dating policies furnished a sufficient basis for a finding that Mattson had authority to enter into a preliminary verbal contract for present insurance, binding upon the defendant until plaintiff was notified that his application had been rejected. It is not important whether we call his authority apparent or implied."

See, also, *Nertney* v. *National Fire Ins. Co.,* supra.

The defendant further claims that there was another clause in the application which sufficiently warned the applicant of

the agent's limited authority, which reads as follows:

". . . that the company shall not be bound, by any act done or statement made, to or by any agent or other person, not contained in this application."

It is apparent that both of these restrictions on the agent's authority are limited to acts or statements of the agent in securing the application for a formal poilcy, which, in the instant case, was to cover a term of three years. They have no bearing on the issue, whether or not the agent had apparent authority to cover the property with temporary insurance, pending decision on the application.

Nearly the same words as those last above quoted were incorporated in the application considered by the court in *Nertney* v. *National Fire Ins. Co.*, supra. And it was there held that a soliciting agent, without authority to issue policies, could bind the insurance company by a contract for present temporary insurance, although the application itself could be accepted only by the company. See, also, the cases cited in that opinion.

But, whatever may be the common law rule, it is provided by statute in this state that agents of insurance companies "shall be regarded as in the place of the company in all respects regarding any insurance effected by them" (R. S., Maine, 1930, Chap. 60, Sec. 119). This language is exceedingly broad and comprehensive, and, as has been said, "is best construed by interpreting it just as it reads" (*LeBlanc* v. *The Standard Insurance Company*, 114 Me., 6, 95 A., 284, quoted in *Bradbury* v. *The Insurance Company of the State of Pennsylvania*, 119 Me., 417, 111 A., 609) and includes agents of mutual companies as well as stock companies (*Zell* v. *Herman Farmers' Mut. Ins. Co.*, supra).

The application of that statute is not made to depend upon the issuance of an insurance policy, but upon the question whether insurance has been "effected" by the agent. And if, in the instant case, Campbell, as such agent, covered the plaintiff

with temporary insurance on this property, then insurance was "effected" by him, within the meaning of the statute.

The undoubted purpose of that statute is to make it as safe for persons seeking insurance to "deal with the agents, with whom alone they ordinarily transact their business, as if they were dealing directly with the companies themselves." *Le-Blanc* v. *The Standard Insurance Company*, supra.

In the case last cited, the court said:

> "To the insured the agent is for all practical purposes the company. Good public policy then requires that the companies that appoint these agents and hold them out as their representatives shall be bound by what they do, and that if an agent acts without authority, or in excess of authority, his principal should bear the consequences, rather than the insured who trusted him."

See, also, *Bradbury* v. *The Insurance Company of the State of Pennsylvania*, supra.

In the instant case there is no question but that in making out the plaintiff's application and transmitting it to the defendant, Campbell acted as the defendant's agent (R. S., Maine, 1930, Chap. 60, Sec. 38). Indeed, there is not the slightest contention to the contrary. And, after a careful consideration of all of the circumstances, we cannot say as a matter of law that Campbell did not have apparent authority to cover the plaintiff with such temporary insurance on said property. Neither the bylaws nor the statute relative to membership prohibited it.

It is stated in Article III of the defendant's bylaws that:

> "All persons, firms or corporations who are policy-holders in this Company shall be members of the Company during the continuance in force of their respective policies and no longer."

And R. S., Chap. 60, Sec. 35, provides that:

"Every person insured by such company . . . is a member of the company during the term specified in his policy, and no longer."

While that bylaw and the statute just quoted make all policy holders members, yet they do not require that all members must be policy holders at the time of the destruction of the property by fire. A policy of insurance is merely evidence of the fact that the person to whom it has been issued is insured. But one may be insured in a mutual assessment fire insurance company even before a policy is made out. In *Greenlaw* v. *Aroostook County Patrons Mutual Fire Insurance Company*, 117 Me., 514, 105 A., 116, the court, speaking with reference to the applicant for renewal insurance, said:

"From the moment that his application was accepted, plaintiff had insurance protection, effective from the expiration of the first policy. Not evidenced by a policy, for the policy had not been made."

So, the test of membership in a mutual assessment fire insurance company is not whether a policy has been issued, but whether or not the applicant was insured at the time in question. The length of time for which he was insured, or the manner in which the insurance had been effected is immaterial, if he was then in fact insured.

There is nothing in this case inconsistent with the rule laid down in the case last cited. The point involved here was not presented there. In that case, the application had been accepted, and it was not necessary for the court to decide whether or not an agent could effect valid temporary insurance pending decision on an application for a policy covering a period of years.

*Carleton* v. *Patrons' Androscoggin Mutual Fire Insurance Company*, supra, is not in point. Although the question of liability pending decision on the application, based upon the assurance of protection made by the secretary of the company,

was raised, yet it was pointed out in the opinion that that question was not before the court. There the application had been accepted, and the policy had been issued, before the fire.

In returning a verdict for the plaintiff in the instant case, the jury must have found that at the time of the fire he was temporarily insured in the defendant domestic mutual assessment fire insurance company. And since he was then insured therein, it necessarily follows, in applying the test above laid down, that he was, at the time of the fire, a temporary member of that company.

So, conceding that in order to recover against such a company on a fire loss, the plaintiff must show that at the time of the fire he was a member of that company, yet he brought himself within that rule by proving that at that time he was a temporary member thereof.

On the facts presented here, we cannot adopt the rule laid down in *Bracken County Ins. Co.* v. *Murray,* 166 Ky., 821, 179 S. W., 842. Decision there, based upon a statute of that state and the bylaw there considered, is to the effect that one cannot become a member of such a company until his application is accepted *and the policy granted.* By that we presume it was meant that the policy must at least have been made out if not actually delivered, for the court there said:

". . . the general rule seems to be that one does not become a member of a mutual fire insurance company until he receives his policy."

In the light of the Maine statutes and the bylaws of the defendant in the case at bar, we hold otherwise, for reasons already stated. Moreover, such a rule is contrary to the views expressed by this court in the above quotation from the last cited Maine case, to the effect that the company might be liable *even although* the policy had not been made.

After considering all of the evidence, we cannot say that the verdict of the jury in the instant case was manifestly wrong.

*Exceptions.*

The defendant takes nothing by its exceptions.

The testimony as to the conversation relative to the plaintiff being "covered" was admissible. See the decisions above referred to. The cases cited by the defendant to the effect that oral testimony is not admissible to contradict the terms of a written instrument are not in point. So far as *Allen* v. *Massachusetts Mutual Accident Association,* supra, holds that an agent cannot accept an application which provides that the defendant should not be liable before the receipt and acceptance of the application by the secretary in Boston, it is not contrary to the views expressed here. In the instant case, Campbell did not accept or purport to accept the plaintiff's application for a three-year policy. He only undertook to cover the property with insurance pending the decision on the application by the defendant. Certainly a collateral undertaking to cover property with fire insurance pending decision of the insurance company on an application for a formal policy, is not contradictory of, or inconsistent with, such application. See cases cited above.

As bearing on the question whether or not Campbell in fact covered this property with temporary insurance, it was admissible to show that, on receiving notice of the fire, he went to the scene, made some investigation, said something relative to the extent of the loss, and notified the defendant of the fire by telegram. It was for the jury to consider whether or not Campbell's statements and actions at that time had reference to that property, and, if so, whether they amounted to a tacit admission by him that he had covered the plaintiff with temporary insurance, as the latter contends — it not appearing that the plaintiff had any other insurance thereon.

The defendant takes nothing by its exceptions to the refusal to instruct the jury that the plaintiff was charged with knowledge of limitations of the agent's authority, printed in the application, which the plaintiff, not having on his glasses, did not

read. For even if he were so charged, which we find it unnecessary to decide, that would not affect the situation here. The limitations therein mentioned had nothing to do with an agent's authority to cover the property with temporary insurance, but only pertained to his authority in securing the application for the formal three-year policy sought by the plaintiff.

The letter Campbell wrote to the defendant and enclosed with the application, unknown to the plaintiff, and questions asked Campbell with reference thereto, were properly excluded. Letters written by a contradicted witness to his employer, unknown to the other interested party, and offered in evidence by the employer who called the witness to testify, are not admissible although they coincide with the testimony of the witness at the trial. *Pulsifer* v. *Crowell,* 63 Me., 22.

In such circumstances, the contents of the letters are but the declarations of the witness himself, and are inadmissible to bolster up his own testimony. They are entitled to no greater respect than his oral declarations to others at other times and places, which are clearly inadmissible. *Ware* v. *Ware,* 8 Me., 42; *Scott* v. *Blood,* 16 Me., 192, 198; *Powers* v. *Carey,* 64 Me., 9, 19.

The pamphlet containing instructions issued by the defendant to its agents, of which it does not appear the plaintiff had any knowledge, was properly excluded.

An applicant for insurance is not bound by instructions given by the insurance company to its agents, of which the applicant had no actual knowledge, where he was not charged with such knowledge. *The Commercial Mutual Marine Insurance Company* v. *The Union Mutual Insurance Company of N. Y.,* 19 How., 318, 15 Law ed., 636; *Brown* v. *Franklin Mutual Fire Insurance Company,* supra; 1 Cooley's Briefs on Insurance, page 565; *Nertney* v. *National Fire Ins. Co.,* supra, and cases therein cited.

In *Gilmore* v. *Bradford,* 82 Me., 547, 20 A., 92, the court said:

"... It is well settled that an oral contract of insurance, made with an agent, is binding on the company (*Walker* v. *Ins. Co.*, 56 Me., 371), even if the agent in making it disobeyed his instructions (*Packard* v. *Fire Ins. Co.*, 77 Me., 144)."

There is no merit in the defendant's exceptions relative to the question of consideration, for reasons stated in this opinion.

None of the other exceptions can be sustained. Although they have all been carefully examined, the views above expressed render a discussion of them unnecessary.

The mandate is

*Motion for a new trial denied.*
*Exceptions overruled.*