The **ISMERT–HINCKE MILLING COMPANY, a corporation, Appellant,**

v.

**AMERICAN CREDIT INDEMNITY COMPANY OF NEW YORK, Appellee.**

No. 15257.

United States Court of Appeals
Eighth Circuit.
July 12, 1955.

Solbert M. Wasserstrom, Kansas City, Mo. (Philip L. Levi, Kansas City, Mo., on the brief), for appellant.

Thomas D. Circle, Kansas City, Mo. (W. Arnold Brannock, Kansas City, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

This action involves the construction of a policy of credit insurance. Diversity of citizenship and the statutory amount establish federal court jurisdiction.

Plaintiff (appellant) brought suit against the defendant for certain losses which it claims were covered by the policy. The main portion of the policy provided as follows: American Credit Indemnity Company of New York.

"In Consideration of the warranties and representations made in the application for this Policy of Credit Guaranty, which are hereby made a part of this Policy, and of the payment of the premium as hereinafter provided and subject to the Conditions and Stipulations hereinafter set forth, which are also hereby made a part of this Policy,

"Hereby Guarantees Ismert-Hincke Milling Company of Kansas City, Mo., hereinafter called the Policyholder, engaged in the business of Flour & Feed Milling, against loss due to insolvency, only as hereinafter defined, of debtors, to an amount not exceeding Fifty Thousand & 00/100ths Dollars ($50,-000.00), which shall be the amount of this Policy, provided that such insolvency shall have occurred within the term beginning the 1 day of August, 1953, and ending the 31 day of July, 1954, which shall be known as the Policy Term; provided also that such loss shall consist of the unpaid purchase price of the Policyholder's bona fide sales of Flour & Feed shipped during said term and actually delivered in the usual course of business to individuals, firms, copartnerships or cor-

porations in the United States of America, Territories thereof, and the Dominion of Canada; and which loss shall have been covered, filed and proved as hereinafter stipulated. *From the aggregate amount of the net covered losses,* ascertained as hereinafter provided, *there shall be deducted* Ten per cent (10%) thereof as *Coinsurance; and, from the remainder, a Primary Loss to be borne by the Policyholder,* equal to 8.8/100ths of One per cent of the total gross sales so made during said term, less (a) all allowances actually made on said sales during said term, and (b) the invoiced price of any of said sales returned and accepted by the Policyholder during said term; *such Primary Loss, however, in no event to be less than $4,-400.00;* and the remainder, not exceeding the amount of this Policy, less any amount owing to the Company, shall be the amount payable to the Policyholder by the Company." (Emphasis supplied.)

Thereafter, as a part of the contract, there appear some twelve conditions and stipulations to which are attached a number of riders, including the application executed by the plaintiff. Condition No. 2 provides for "governing rating and coverage". Under that condition, the plaintiff's debtors are keyed to the ratings of Dun and Bradstreet, Inc. The rating table provides the gross amounts covered, beginning with $20,000.00 for the highest rated accounts and diminishing to no coverage for some debtors whose Dun and Bradstreet rating was so low as to apparently warrant no coverage. Condition 8 of the policy provided as follows:

"Time for and Method of Adjustment—Adjustment shall be made within a period not to exceed Sixty (60) days after the receipt by the Company of the Final Statement of Claim, and the amount then ascertained to be due the Policyholder under this Policy shall be paid.

"*To ascertain the net loss* in any adjustment under this Policy, *there shall be deducted from each gross loss covered,* filed and proved hereunder:

"All amounts collected from the debtor or obtained from any other source;

"The invoiced price of goods returned, reclaimed or replevined, when such goods are in the undisputed possession of the Policyholder;

"Any discount to which the debtor would be entitled at the time of adjustment;

"Any legally sustainable set-off that the debtor may have against the Policyholder;

"Any amount mutually agreed upon as thereafter obtainable.

"If no mutually satisfactory agreement can be reached as to the amount thereafter obtainable on any loss, the Company will allow the unpaid portion of such loss, so far as covered. If the entire indebtedness of every kind of a debtor to the Policyholder at the time of insolvency be in excess of the gross amount covered by this Policy, then the above deductions shall be made pro rata, in the ratio which the gross amount covered bears to the whole of such indebtedness. *Having made the foregoing deductions from each gross loss covered, filed and proved under this Policy, the result shall be the net loss.*

"From the aggregate amount of such net losses there shall be deducted Ten per cent (10%) thereof as Coinsurance, then from the balance, the amount of the Primary Loss; the remainder (not exceeding the amount of this Policy) less any amount owing to the Company, shall be the amount payable to the Policyholder by the Company. \* \* \*" (Emphasis supplied.)

Apparently plaintiff desired some insurance on accounts not covered under the Dun and Bradstreet rating as referred to in Condition 2. This resulted in the following "Limited Coverage" en-

dorsement referred to as the "L Rider", which provided as follows:

"By this rider attached to and made part of Policy No. N–151, 817–C issued by American Credit Indemnity Company of New York, to Ismert-Hincke Milling Company of Kansas City, Mo., it is understood and agreed that as a part of Condition 2 of said Policy, additional limited coverage provisions are hereby added, as follows:

"If the Policyholder shall make shipments to debtors dealing in the merchandise sold by the Policyholder or using it in connection with or incident to an established business and any such debtor, at the date of shipment, be not listed in the agreed books or reports of the governing Agency, or if no coverage be afforded, either on the debtor's rating by the governing Agency, or by any other rider attached to said Policy, a loss arising from such shipments shall, if otherwise coming within the terms, conditions and stipulations of said Policy, be covered under the provisions of this rider, *but the gross amount to be covered on any one debtor* at the date of insolvency for such shipments made, *shall in no event exceed $3,500.00.*

"The Coinsurance to be deducted from the net covered and proved losses as ascertained under Condition 8 on all debtors coming within the provisions of this rider shall not be 10% as specified in Condition 8 of said Policy, but shall be 20%, and the aggregate amount of net losses coming within the provisions of this rider, after deduction of the applicable Coinsurance, shall be limited to Fifteen Thousand & 00/100ths Dollars ($15,000.00).

"The aggregate amount of net losses, after deduction of the applicable Coinsurance, determined as coming within and as limited by, the provisions of this rider, shall enter with the net amounts of all other losses covered and proved under said Policy in calculating under Condition 8 the amount from which *the agreed Primary Loss, to be borne by the Policyholder, shall be deducted,* and this rider shall in all respects have the same effect as if its provisions had been incorporated in the body of said Condition 8 of said Policy.

"Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions or stipulations of said Policy, other than as above stated." (Emphasis supplied.)

The "B Rider", or Conditional Exemption of Primary Loss, provided as follows:

"By this rider attached to and made part of Policy No. N–151, 817–C issued by American Credit Indemnity Company of New York, to Ismert-Hincke Milling Company of Kansas City, Mo., it is understood and agreed that the Primary Loss to be borne by the Policyholder as provided in the Caption and Condition 8 of said Policy, shall not be deductible as therein provided, from any loss resulting from any shipment to a debtor whose 'governing rating' at date of shipment was any one of those shown below; and provided such rating be one included for coverage in the Table of Ratings and Coverage governing under Condition 2 of said Policy:

| | | | |
|----|----|----|------|
| Aa | A1 | Aa | 1 |
| A+ | A1 | A+ | 1 |
| A | A1 | A | 1 |
| B+ | 1 | B+ | 1½ |
| B | 1 | B | 1½ |
| C+ | 1 | C+ | 1½ |
| C | 1½ | | |
| D+ | 1½ | | |
| D | 1½ | | |
| (Blank) | 1 | | |

"Nothing herein contained shall be held to vary, alter, waive or extend

any of the terms, conditions or stipulations of said Policy, other than as above stated."

The policy was a renewal of another policy previously carried by the plaintiff with defendant. Application for this particular policy was executed by the plaintiff on July 24, 1953, and will be hereinafter referred to.

During the policy year, the plaintiff did a gross business of $11,417,302.91, with insolvency losses arising from two accounts, the Asheville Baking Company and the Lyle Wholesale Company. The Asheville account shows a gross loss of $15,332.50 with a salvage of $4,599.75 and the Lyle account shows a gross loss of $2,717.65 with a salvage of $1,242.86. Both of these accounts had Dun and Bradstreet ratings bringing them within the limited coverage afforded under the L Rider.

On the basis of the foregoing, plaintiff made claim under the policy. Defendant took the position that nothing was owing after the deductions provided for in the contract had been made and accordingly refused payment. Suit was commenced by the plaintiff. The defendant moved to dismiss on the ground that the complaint did not state a claim upon which relief could be granted under the policy. The trial court, in a carefully considered opinion, held with the defendant and treated its motion to dismiss as a motion for summary judgment, which it granted. This appeal followed.

The plaintiff raises three points in the appeal, contending as follows:

1. The deductions provided for by the policy are to be subtracted from the total bad indebtedness, not from the amount of limitation on coverage;

2. Claims under the L Rider are not subject to deduction for primary loss;

3. If primary loss is applicable to claims under the L Rider, then the amount of primary loss deduction is reduced by virtue of the B Rider.

■ Plaintiff's first contention that the deductions must be subtracted from the total bad indebtedness and not from the gross loss covered cannot be sustained. The policy specifically provides in Condition 8 that in order to ascertain the net loss in any adjustment under the policy, certain deductions are to be made from "each gross loss *covered*". It then provides that from the *aggregate* of the net losses there shall be deducted the coinsurance and then the primary loss, the result being the amount payable to the policyholder by the company. In no place in the policy is there a provision that the deductions are to be subtracted from the total bad indebtedness and that may not be read into the contract by inference where the unambiguously stated terms of the policy provide that the deductions are to be taken from each gross loss *covered*.

■ A further contradiction of the plaintiff's theory is contained in Condition 2 where the policy reads: "The gross amount covered *on the total indebtedness* of any one debtor shall not exceed * * * the amount set opposite the governing rating of such debtor * * *". Read in context, this means the amount "insured" (see Muntz v. Travelers Mut. Casualty Co., 1941, 229 Iowa 1015, 295 N.W. 837, 841; Hurd v. Maine Mut. Fire Ins. Co., 1942, 139 Me. 103, 27 A.2d 918, 923), of the total indebtedness shall not exceed the stated amount, or, stated another way, the insurance is operative only on the amount of loss within the limitation.

■ The Supreme Court of Missouri, in the case of Central Surety & Insurance Corporation v. New Amsterdam Casualty Co., 1949, 359 Mo. 430, 222 S.W.2d 76, 78, states the applicable rule for construction of insurance contracts as follows:

" 'In the construction of the policy, the rules to be followed are well settled. The policy is a contract. Plain and unambiguous language must be given its plain meaning. *The contract should be construed as a whole;* but, in so far as open to different constructions, that most favorable to the insured must be adopted. State ex rel. Security Mutual Life Ins. Co.

v. Allen, 305 Mo. 607, 614, et seq., 267 S.W. 379, 381, 382. However, as said in 14 R.C.L. § 103, p. 931, *the rule "does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity when none exists."* ' (Italics ours.) Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, loc. cit. 101, 57 A.L.R. 615."

We find no ambiguity here and may not read into the policy anything contrary to its plain terms.

Plaintiff relies upon a case of the New York Court of Appeals, Blakeslee, Perrin & Darling v. Ocean Accident and Guarantee Corporation, 1915, 166 App.Div. 587, 151 N.Y.S. 1038, affirmed per curiam 221 N.Y. 706, 117 N.E. 1061. That case is not authority for plaintiff's position as the policy therein is worded differently than that with which we are here concerned.

■ Plaintiff also refers to the application for insurance as being inconsistent with the claim that the deductions were to be made from each gross loss covered. The application makes no reference thereto and no inconsistency appears. It is true that the application is a part of the entire contract. But it is only a part. If the application contained all the provisions of the contract and was accepted by the company, there would be no necessity for the issuance of a subsequent contract. This contract, like any other, is to be read in its entirety and so read, plaintiff's first ground must fail.

■ Plaintiff's second contention that claims under the L Rider are not subject to primary loss deduction is equally without foundation. The L Rider itself refers to the "agreed primary loss to be borne by the Policyholder". It further provides that "nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions or stipulations of said policy other than as above stated". There is no provision therein that the primary loss is not to be deducted from claims coming under the L Rider.

The main portion or insuring part of the contract specifically provides for the deduction of a primary loss, the amount of which was to be based upon the insured's gross business but in any event to be not less than $4400.00. Condition 8 of the policy contains specific reference to primary loss deduction. Plaintiff's position is not tenable.

■ Plaintiff's third point is that if the primary loss is applicable to claims under the L Rider, then the *amount* of primary loss deduction is reduced by virtue of the B Rider, supra.

Plaintiff points out that the complaint alleges that the amount of sales during the policy period on accounts rated less than C+ 1½ amounts to less than 10% of its gross business. It contends that the result of exempting 90% of plaintiff's business from the primary loss automatically results in a reduction of the primary loss applicable to all accounts by 90%. If that had been the intention of the parties, it would have been easy to have so provided. We cannot read into the policy something that is not there any more than we can create ambiguity or lack of clearness where none exists. The B Rider is simply an endorsement providing that the primary loss shall not be deductible from losses to debtors whose governing rate is C+ 1½ or higher. In other words, those debtors whose credit rating was high were considered less hazardous insofar as insolvency was concerned and no primary loss deduction was to be taken as to such accounts or debtors. The B Rider contains no reference to the limited coverage afforded in the L Rider. The contract in no uncertain terms provides for deducting coinsurance and primary loss from the aggregate amount of net covered losses and specifically provides that the primary loss in no event was to be less than $4400.00.

The trial court, in its opinion, after quoting the provisions of the policy set forth heretofore, stated:

"The foregoing language used in the policy is clear, unambiguous and in no-wise misleading. Therefore, We must accept it as correctly repre-

senting the agreement and intent of the parties as to policy coverage. When so considered it is clearly revealed that the 'aggregate amount of the net covered losses' as to which plaintiff was afforded coverage under the instant policy and circumstances here considered was the sum of $3,924.79, ($3,500.00 minus $1,050.-00 apportioned salvage as to the Asheville account; and $2,717.65 minus $1,242.86 salvage as to the Lyle account). But that is not the amount 'payable to the Policyholder by the Company' under the policy. Further provisions in the policy reduce that amount by twenty per cent as and for coinsurance, or $784.96; and the percentage which the parties agreed that plaintiff would bear, to-wit, as a 'Primary Loss' of not 'less than $4,400.00,' before there would be any 'amount payable to the Policyholder by the Company'. Since plaintiff's self-sustained 'primary loss' thus exceeds the amount of the remainder of 'aggregate net losses' computed as above, no portion of the loss here claimed by plaintiff appears to be recoverable under the policy. However harsh such result may be, it is the only conclusion that can be drawn from the plain and unmistakable terms of the contract which plaintiff apparently freely entered into."

Plaintiff complains bitterly that the defendant refuses to pay losses on a policy for which it paid a substantial premium. The answer to that is that the policy of insurance itself excluded any recoverable amount under the circumstances here presented. Plaintiff is no more entitled to recover than is the insured who carries a $50.00 deductible collision policy on his automobile and has an accident with damage amounting to only $45.00. If plaintiff had been less fortunate in its collections on over eleven million dollars worth of business, it would have been more fortunate in recovering from its insurance company.

The trial court's order dismissing this case was proper and is affirmed.