**STANDARD TITLE INSURANCE COM-
PANY, Appellant,**

v.

**UNITED PACIFIC INSURANCE COM-
PANY, Appellee.**

**No. 18242.**

United States Court of Appeals
Eighth Circuit.

Aug. 15, 1966.

Michael J. Bogutski, of Stinson, Mag,
Thomson, McEvers & Fizzell, Kansas
City, Mo., for appellant.

James C. Mordy, of Morrison, Hecker,
Cozad & Morrison, Kansas City, Mo., for
appellee.

Before VAN OOSTERHOUT, BLACK-
MUN and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by plaintiff Standard Title Insurance Company (Standard) from judgment sustaining defendant United Pacific Insurance Company's (United) motion for partial summary judgment. The trial court determined that under Rule 42(b) the issue of whether defendant's liability under its bond extended to acts occurring prior to September 20, 1960, should be separately tried and upon the basis of stipulations and affidavits on file sustained defendant's motion for partial summary judgment and dismissed plaintiff's complaint with respect to items in category one. The trial court entered its findings of fact, conclusions of law and partial judgment holding that plaintiff was not entitled to recover on the claim in the first category, totaling $128,363.70, which arose out of acts occurring prior to September 20, 1960. The court certified, pursuant to Rule 54(b), that there was no just reason for delay and entered final judgment in favor of the defendant on the claims in the first category.

Jurisdiction, based upon diversity of citizenship and the required amount, is established. Jurisdiction to hear this appeal exists by reason of the entry of final judgment upon the issue involved in this appeal pursuant to Rule 54(b) certification by the trial court.

It is undisputed that Standard was insured under a commercial blanket bond issued to it by the defendant United dated April 11, 1960, but effective March 1, 1960. Such bond was in full force and effect during the period here pertinent.

Under such bond, United agreed to indemnify Standard against any loss it might sustain "through any fraudulent or dishonest act or acts committed by any of the employees [agents] acting alone or in collusion with others."

It was agreed that the policy would protect Standard only against the acts of agents. Accordingly by rider, it was agreed that whenever the word "employee" was used in the bond it would be changed to "agent" and that the section of the bond defining an employee be deleted and one defining agent be substituted therefor. The agent definition in the rider reads:

"Section 3. As used in this Bond, 'Agent' means any natural person, partnership or corporation who has entered into an Agency Agreement with the Insured covering the conduct of the Insured's Title Insurance business, while such Agency Agreement is in effect, during the Bond Period and while in possession of money or other property belonging to the Insured or in which the Insured has an interest but does not mean any officer, clerk or other employee of the Insured nor any broker, factor, commission merchant, consignee, contractor or other agent or representative of the same general character other than such defined agent. Each such agent and the partners, officers and employees thereof shall, collectively, be deemed to be one Agent for all the purposes of this bond; excepting, however, Sections 6 and 12".

Standard category one claim is based entirely upon certain acts of Dan Hayes which Standard claims to have been fraudulent and dishonest. Dan Hayes was president and an employee of Platte County Title Corporation (Platte) during all of the time covered by the complaint and all the alleged fraudulent transactions in this category took place between the time of the effective date of the bond and September 20, 1960.

We agree with the trial court's determination that no written agency agreement was in effect between Standard and Platte or Hayes prior to September 20, 1960. The agreement dated September 20, 1960, was not signed or entered into prior to such date and such agreement specifically states that it is effective September 20, 1960.

We disagree with the trial court's determination that a written agency agreemen is a prerequisite to liability under the blanket bond defendant issued, and therefore reverse.

We find nothing in the vital agency definition of the rider heretofore quoted or the policy as a whole which requires a written agency agreement.

■ If the contract is not ambiguous, then its provisions as written must be accepted without resort to any rules of interpretation and intent of the parties must be determined from the language used in the written contract. Eastmount Constr. Co. v. Transport Mfg. & Equip. Co., 8 Cir., 301 F.2d 34, 39; Minneapolis-Moline Co. v. Chicago, M., St. P. & P. R. R., 8 Cir., 199 F.2d 725, 730; Pitcairn v. American Refrigeration Transit Co., 8 Cir., 101 F.2d 929, 936; Needles v. Kansas City, Sup.Ct.Mo., 371 S.W.2d 300, 304; Massey-Ferguson, Inc. v. Bent Equip. Co., 5 Cir., 283 F.2d 12, 14; 17 Am.Jur.2d, Contracts, §§ 241, 245.

In 17 Am.Jur.2d, Contracts, § 245, pp. 534–35, the rule is thus stated:

"If the language used by the parties is plain, complete, and unambiguous, the intention of the parties must be gathered from that language, and from that language alone, no matter what the actual or secret intentions of the parties may have been. Presumptively, the intent of the parties to a contract is expressed by the natural and ordinary meaning of their language referable to it, and such meaning cannot be perverted or destroyed by the courts through construction."

In Davis v. Liberty Mut. Ins. Co., 8 Cir., 308 F.2d 709, 710–711, we said:

"This court in Ismert-Hincke Milling Co. v. American Credit Indemnity Company of New York, 8 Cir., 224 F.2d 538, 542, has set forth the rule in Missouri which is binding in this case, saying:

'The Supreme Court of Missouri, in the case of Central Surety & Insurance Corporation v. New Amsterdam Casualty Co., 1949, 359 Mo. 430, 222 S.W.2d 76, 78, states the applicable rule for construction of insurance contracts as follows:

" 'In the construction of the policy, the rules to be followed are well set-tled. The policy is a contract. Plain and unambiguous language must be given its plain meaning. *The contract should be construed as a whole;* but, in so far as open to different constructions, that most favorable to the insured must be adopted. State ex rel. Security Mutual Life Ins. Co. v. Allen, 305 Mo. 607, 614, et seq., 267 S.W. 379, 381, 382. However, as said in 14 R.C.L. § 103, p. 931, *the rule "does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity when none exists."* (Italics ours) Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, loc. cit. 101, 57 A.L.R. 615.' "

"We find no ambiguity here and may not read into the policy anything contrary to its plain terms."

"The last sentence above is particularly appropriate here. The court ought not read into this policy anything contrary to its plain terms."

■ The interpretation and construction of written contracts are matters of law within the competence of Courts of Appeal to review. Cordovan Associates, Inc. v. Dayton Rubber Co., 6 Cir., 290 F.2d 858, 860; Eddy v. Prudence Bonds Corp., 2 Cir., 165 F.2d 157, 163; Road Improvement Dist., etc. v. Roach, 8 Cir., 18 F.2d 755, 759.

■ Upon application of the foregoing rules to the facts of this case, we find that the policy as amended by the rider contains no express requirement for a written agency agreement nor can such requirement be reasonably implied from the language of the policy as amended. A fair reading of the provision, "agent means any natural person, partnership or corporation who has entered into an Agency Agreement with the Insured", would not compel an assumption that the agency agreement must be in writing. If such had been the intention, United as scrivener could readily have manifested such intention by inserting the word "written" immediately preceding the

words "agency agreement." We see no significance in the fact that the first letters of the words "agency" and "agreement" are capitalized.

■ No statute or cases have been cited which require an agency contract to be in writing. Generally an agency contract is not required to be in writing. See State ex rel. Kugler v. Tillatson, Sup. Ct.Mo., 312 S.W.2d 753, 755; 2 C.J.S. Agency §§ 20, 25 and 26.

Upon the limited issue presented by this appeal, which is whether the defendant's blanket bond as amended requires agency agreements to be in writing, we hold that no ambiguity exists in the language used. Upon examination of the bond as a whole, we find no language which expressly or impliedly requires the agency agreement to be in writing. The bond by its clear terms provides coverage with respect to any agency agreement whether it be oral or written provided that the agent sought to be covered falls within the definition of agent hereinabove quoted.

■ If the preliminary negotiations for the bond are considered, the result will be no different. While in applying for the bond, Standard submitted a blank form of an agency contract it was using, stating such form was enclosed for information, no representation was made that the written contract would be obtained in all instances in creating an agency nor did the rider amending the bond require such

form or any other prescribed written form be used to establish an agency. At the time of the application for the bond, plaintiff had fifteen prospective agents including Platte. The bond premium was based upon blanket coverage for up to seventy-five agents, which number of agents was never reached. The bond contained no requirement that United be furnished with copy of any agency contract or that it be advised as to the names of agents covered. The bond issued was a blanket bond covering all agents meeting the policy agency definition.

Since the trial court determined the bond required a written agency agreement, the trial court based its finding of no coverage upon its determination that no written agency agreement existed prior to September 20, 1960. The court did not reach or determine whether an oral agency agreement existed between plaintiff and Platte which met the bond requirements.[1]

Such issue is one of fact upon which the plaintiff is entitled to a trial and findings. Whether such issue shall be determined separately or along with other issues remaining in the case rests in the discretion of the trial court.

■ The summary judgment dismissing category one of plaintiff's cause of action is reversed and this case is remanded to the trial court for further proceedings consistent with the views here expressed.

[1]. Included in the court's conclusions of law is the following:

"3. The acts of Dan Hayes, as an employee of Platte County Title Corporation, were not covered by said Bond prior to September 20, 1960, even though:

(a) plaintiff delivered title insurance policies to Platte County Title Corporation in January of 1960 (Stipulation, ¶ 14) ;

(b) plaintiff appointed Dan Hayes as its Validating Officer in May 1960 for the purpose of signing its interim title insurance binders and countersigning its title insurance policies (Stipulation, ¶ 19) ;

(c) plaintiff's interim title insurance binders and its title insurance policies were actually issued by Platte County Title Corporation and signed or countersigned by Dan Hayes between May 1960 and September 20, 1960 (Stipulation, ¶¶ 22–23, 30) ;

(d) premiums were actually collected by Platte County Title Corporation for such title insurance policies between May 1960 and September 20, 1960, and net premiums were remitted to Standard Title Insurance Company for such title insurance policies (Stipulation, ¶¶ 22, 24, 30) ;

(e) Platte County Title Corporation was in fact acting as its agent as early as May 1960 (Stipulation, ¶¶ 14, 16, 18, 19, 20, 22, 23, 24; Savage Affidavit).