Alfred LeBlanc *vs.* The Standard Insurance Company.

Androscoggin. Opinion September 7, 1915.

*Automobile. Condition. Indemnity. Insurance. Negligence. Notice. Waiver.*

The plaintiff held an insurance policy in the defendant company, issued by a local agent under which he was to be indemnified against loss from the liability imposed by law on account of bodily injuries accidentally sustained by any person through the maintenance or use of a certain automobile owned by himself. The insurance was subject to conditions in the policy, namely, that it did not cover liability for injuries received while the automobile was being used for other than certain specified purposes; that

upon the occurrence of an accident, the insured should give immediate written notice thereof to the company at its home office, or to its duly authorized agent; and that the insured should give like notice of any claim made against him on account of such accident, and that if thereafter any suit was brought against him, he should immediately forward to the company every summons or other process served upon him. An accident occurred. The plaintiff gave immediate oral notice to the local agent, who told him he would take care of him, and that a firm of local attorneys would see him. The local agent at once made a full written report to the company or one of its general agents. The company on the day following, by its attorneys in Boston, referred the matter for investigation to the same local attorneys. They investigated and reported. They were instructed to get the evidence in writing, and in the meantime to attempt to make a settlement. Plaintiff did not report the accident in writing to the company, nor did he when sued on account of the accident send the summons to the company, but gave it to the local attorneys as he had been directed to do by the local agent who issued the policy. In a suit on the policy, held:—

1.  That the evidence does not sustain the contention that the automobile was being used for a purpose other than those covered by the policy.
2.  That the failure of the plaintiff to give written notice of the accident and of the claim made on him, was waived by the acts of the local agent and of the various investigating attorneys.
3.  That the company is bound by the direction given the plaintiff by the local agent to give any summons served upon him to the local attorneys, as much so as if the direction had come from the home office.
4.  Under Revised Statutes, chapter 49, section 93, which provides that "the agents of insurance companies shall be regarded as in the place of the company in all respects regarding any insurance effected by them," an agent has power to waive the requirement in the policy for a written report of loss or injury; and directions given to the insured by an agent as to procedure touching the subject matter of the insurance, are binding upon the company, whether given before or after liability has been incurred. The agent stands in the place of the company in all respects.

On report. Judgment for plaintiff for $2,533.27 and interest from October 5, 1914.

This is an action for indemnity under a contract of insurance entered into by and between the parties hereto. Plea, the general issue with brief statement. At the conclusion of the evidence, by agreement of the parties, this case was reported to the Law Court for its determination, upon so much of the evidence as is legally admissible.

·The case is stated in the opinion.

*McGillicuddy & Morey, and Harry Manser,* for plaintiff.

*White & Carter,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, KING, BIRD, HALEY, HANSON, JJ.

SAVAGE, C. J. On December 2, 1912, an automobile, owned by the plaintiff, and driven by his brother Philip, collided with a team driven by one Littlefield, as a result of which Littlefield was injured and afterwards died. On March 14, 1913, suit was brought by Littlefield's administrator against the plaintiff to recover the damages sustained by Littlefield, on account of negligence in the operation of the automobile. The case was tried at the April term of this court in Androscoggin county, and that plaintiff recovered a verdict and judgment, which afterwards was satisfied by this plaintiff by paying the sum of $2,533.27. At the time of the accident this plaintiff held a policy in the defendant company, issued by its local agent, Harvey, at Lewiston, indemnifying him "against loss from the liability imposed by law upon him for damages on account of bodily injuries, including death at any time resulting therefrom, accidentally sustained by any person or persons, by reason of the maintenance or use of" the automobile in question. This action is brought upon that policy to recover the amount paid by the plaintiff in satisfaction of the Littlefield judgment, and comes to this court upon report.

By the terms of the policy, the insurance was made subject to certain conditions, among which are the following: "This policy does not cover loss from liability on account of such injuries (including death) caused or suffered by reason of the maintenance or use of such automobile . . . while used for any purpose other than as specified in Item 3 of said Declarations," and "The assured upon the occurrence of an accident shall give immediate written notice thereof, with the fullest information obtainable, to the company at its home office, Detroit, Michigan, or its duly authorized agent. He shall give like notice, with full particulars, of any claim made on account of such accident. If, thereafter, any suit is brought against the assured, he shall immediately forward to the company every summons or other process served on him." Item 3 of the Declarations referred to in the first of the foregoing conditions provides

that "the purposes for which the above described automobiles are to be used are private and pleasure purposes and all ordinary business uses for which automobiles are suitable."

In the brief statement under its plea of the general issue, the defendant set up the following defenses: 1, that at the time of the accident the automobile was not being used for any purpose specified in Item 3 of the Declaration, but was used by Philip Leblanc in the business of the Lewiston Steam Dye House; 2, that the assured did not give notice to the company in writing of any claim made on account of said accident; and, 3, that after suit was brought against the assured on account of said accident, the assured did not forward to the company the original summons and other papers served on him in the Littlefield suit. No other issues are of importance.

The case shows that the plaintiff did not give written notice to the company, but that on the day of the accident the plaintiff told Harvey, the local agent, that an accident had happened to his car, and Harvey replied that he would take care of him, that Oakes, Pulsifer and Ludden, attorneys, would see him.

It further appears that Harvey, the agent, on the day of the accident, made out a full and particular report of the accident upon the company's blank, and forwarded it to Mr. Kemp, the company's Boston resident manager, who had countersigned the policy; Kemp on the next day placed the matter in the hands of Dickson & Knowles, Boston attorneys, for investigation; they at once communicated by telephone with Oakes, Pulsifer & Ludden, and asked them to look the matter up. On the same day, Mr. Pulsifer went to the plaintiff and asked, and was told, how the accident happened, the details of which he reported to Dickson & Knowles. A week later Harvey told the plaintiff to turn over to Mr. Pulsifer any paper that might be served on him. When the summons in the Littlefield suit was served on the plaintiff, he did not forward it to the company, but he testifies that he gave it to Mr. Pulsifer. At the trial of the Alfred Leblanc case, Oakes, Pulsifer & Ludden appeared in defense for Mr. Leblanc. And we think they were justified in supposing that they had authority to do so from this defendant. Not only did Dickson & Knowles ask Oakes, Pulsifer & Ludden to investigate the accident, but they directed them to have the statements of the various witnesses reduced to writing and signed by them, that is, to

do the usual professional work in preparation for a possible trial. And at the same time they directed them to continue their efforts to bring about some satisfactory settlement. Efforts were made by Mr. Pulsifer to effect a compromise, whics he reported to Dickson & Knowles. The correspondence of the Boston attorneys and of the company's home office shows that Oakes, Pulsifer & Ludden were recognized as the local attorneys. We allude to this only because the defendant company now claims that their appearance in the Littlefield suit in its behalf was without authority from it. But in our view of the case, as will be shown hereafter, it is not material to this plaintiff whether Oakes, Pulsifer & Ludden had specific authority from the defendant company or not.

We now take up the several defenses offered in this suit. The contention that at the time of the accident the automobile was being used for a purpose excluded from the terms of the policy is not supported by the evidence. The contention that the plaintiff did not give notice of his claim to the company in writing is sufficiently answered by saying that the requirement was effectually waived by what was said and done by Harvey, the Boston attorneys and the company for a period of four months, before Littlefield suit was commenced, as we have indicated. They had power to waive the requirement that the notice should be given in writing, and that it should be sent to the home office, notwithstanding the provision in the policy that "no condition or provision of this policy shall be waived or altered except by written endorsement, signed by the Secretary." R. S. ch. 49, sect. 93; *Day* v. *Dwelling House Ins. Co.*, 81 Maine, 244.

But the third point in defense is strenuously urged. The policy required the plaintiff to forward the summons served on him to the home office. He did not do so. He says he gave it, as Harvey directed, to Mr. Pulsifer. The decisive question is, is the company bound by the direction which Mr. Harvey gave? If so, the plaintiff has done all that the law required him to do, and is entitled to recover. If not, the plaintiff has failed to perform a condition precedent to the right to maintain a suit. And the answer to the question must be sought in the statute.

The statute relied upon by the plaintiff is section 93 of chapter 49 of the Revised Statutes, which provides among other things that

the agents of insurance companies "shall be regarded as in the place of the company in all respects regarding any insurance effected by them." Other clauses of the statute, which we cite merely to show the scope and purpose of it, are, "The company is bound by their knowledge of the risk and of all matters connected therewith," and "Omissions and misdescriptions known to the agent shall be regarded as known by the company, and waived by it, as if noted in the policy." All these provisions were first enacted in chapter 156 of the Laws of 1870, and have remained unchanged in the several revisions since.

The language of this statute is most comprehensive, and we think it was intended to be so. The statute itself seems to place no limits. The simple purpose of the statute is that those seeking insurance and those afterwards holding policies may as safely deal with the agents, with whom alone they ordinarily transact their business, as if they were dealing directly with the companies themselves. While most of the decided cases in which this statute has been construed involved the agent's knowledge of the risk, or of the insured's title, before issuing the policy, it is certain that statutory provision is not limited to acts alone, or knowledge obtained, by the agent before the policy is issued. Thus, it was held in *Farrow* v. *Cochran, 72* Maine, 309, that an alteration made by an agent in the policy itself after it was issued was binding on the company; and in *Packard* v. *Dorchester Mutual F. Ins. Co.,* 77 Maine, 149, that an agent's consent to alterations in the property, though in contravention of the terms of the policy, was binding; and in *Day* v. *Dwelling House Ins. Co.,* 81 Maine, 248, that an agent could in effect waive the filing of proof of loss within the required time, although the policy declared that no act of any agent, except the president or secretary, should be construed as a waiver; and in the same case that the statute applies to all agents of insurance companies, including those appointed to investigate the circumstances of fires and to adjust losses; and in *Frye* v. *Equitable Life Assurance Society,* 111 Maine, 287, that the company is bound by the agent's waiver of the provision in a policy requiring its return within six months after default in payment, in order to secure a new paid up policy for a specified amount. These cases all relate to dealings with agents on business

relating to the insurance after the policies were issued, and in one case, at least, after the loss had occurred.

There is no limitation in the statute, and we perceive none in the reason of the thing. The statute recognizes what common experience teaches. Men commonly do all their insurance business with agents,—agents appointed by the companies. They have no direct dealings with the companies. They go to the agents on matters of occupancy, alteration and assignment. They go to the agents when losses have occurred, and pursue the steps pointed out by them in proving the losses. To the insured the agent is for all practical purposes the company. Good public policy then requires that the companies that appoint these agents and hold them out as their representatives shall be bound by what they do, and that if an agent acts without authority, or in excess of authority, his principal should bear the consequences, rather than the insured who trusted him. The statute was enacted to give effect to that policy. Such has been the tenor of decisions hitherto, and such we think was the legislative intent. The statute is best construed by interpreting it just as it reads. The agent stands "in the place of the company," is the company *"in all respects* regarding any insurance effected by them."

A study of the history of another insurance statute tends to confirm our view. By section 22 of the same chapter 49, it is provided that "an agent authorized by an insurance company, whose name is borne on the policy, is its agent in all matters of insurance; any notice required to be given to said company or any of its officers by the insured may be given to such agent." Even in its present form, it covers some of the same matters, in the same way, as are provided for in section 93 which we have been considering. And both sections have been referred to, sometimes indiscriminately, as the source of the binding effect given to the acts of agents. But in its original form, Laws of 1861, chap. 34, sect. 2, the section contained the following language: "all acts, proceedings and doings of such agent with the insured shall be as binding upon the company as if done and performed by the person specially empowered or designated therefor by the contract." This language is even more comprehensive and sweeping than that in the Act of 1870, now section 93. It can scarcely be doubted that under such a statute as this, this defendant would be bound by the act of Harvey, directing the plain-

tiff to give any summons when served to Oakes, Pulsifer and Ludden. The language of the Act of 1861 remained unchanged through the several revisions until that of 1903, when the clause we have quoted was omitted in the final enactment. No amendment was made in terms. But the commissioner of that revision, Mr. Morrill, in his report to the legislature expressed the opinion that the clauses in section 21 (now 22) were in effect repeated in and fully covered by the later section, 90 (now 93), and recommended that they be omitted from the statute. And we think it is fairly inferable that the legislature, by adopting the recommendation, approved the interpretation of the commissioner to the effect that the sweeping language in the earlier section was virtually embodied in the later.

The question is not whether Harvey had authority to employ attorneys for the company, and to direct the plaintiff to give them the summons when served. It may be conceded that he had not. The question is whether, when Harvey did direct the plaintiff to give his summons to the attorneys, the company, by force of the statute, is bound by it. We think it is. Surely if the plaintiff had gone to the company's home office, and had there been told, "We will take care of you. If any papers are served give them to Jones," the company could not afterward complain because the summons was not forwarded to the home office. No more can it, when the direction was given by its agent, who is to be regarded as in its place "in all respects" regarding the insurance.

The entry will be,

*Judgment for plaintiff for $2,533.27*
*and interest from October 5, 1914.*