Kenneth A. **LINDSEY** d/b/a
**Lindsey Trucking**

v.

Bruce W. **MITCHELL** and **William Rooney** d/b/a **Mitchell & Rooney Insurance Agency.**

Supreme Judicial Court of Maine.

Argued May 3, 1988.

Decided Aug. 3, 1988.

William Conte (orally), Bangor, for plaintiff.

Peter K. Mason (orally), Searsport, for defendant.

Before McKUSICK, C.J., and
ROBERTS, WATHEN, GLASSMAN,
SCOLNIK * and CLIFFORD, JJ.

CLIFFORD, Justice.

The defendants, Bruce W. Mitchell and William Rooney, who were in the insurance business under the name of Mitchell & Rooney, appeal from a judgment of the Superior Court, Penobscot County, entered on a jury verdict of $40,000 in favor of the plaintiff, Kenneth A. Lindsey, on his negligence claim against the defendants. While we reject their claim that the evidence in this case cannot support any judgment in favor of Lindsey, we agree with the contention of the defendants that the damages were excessive, and accordingly, we vacate the judgment and remand for a new trial on damages unless Lindsey remits a portion of the damages.

The facts in this case, as established by Lindsey's testimony and viewed in the light most favorable to him, are as follows.

* Scolnik, J., sat at oral argument and participated in initial conference but retired before this opinion was adopted.

During the period in question, 1977–1978, Lindsey was self-employed as an independent trucker. Lindsey owned three trucks; he operated two of them to transport peat moss out of Quebec. In January of 1978 Lindsey sought new insurance for the trucks he was operating. He wanted to get insurance that was less expensive than the policy he previously had. The Maine Public Utilities Commission (PUC) and regulatory agencies in other states and the province of Quebec required at the time that all trucks be insured and that confirmation of insurance be filed with each agency. In late January, Lindsey went to the defendants' office and spoke with either Mitchell or Rooney about getting insurance coverage for his trucks. Apparently it was difficult to obtain coverage for Quebec, and Lindsey expressed his concern that he be given coverage that applied to his trucking activities in Quebec. Lindsey was assured that appropriate coverage could be provided. On January 25, 1978, Lindsey gave defendants an initial payment for insurance coverage on his trucks and obtained a binder from the agency.

During the following months Lindsey was informed several times by the PUC that he was not insured and that he was not authorized to operate his uninsured trucks on the roads. Lindsey repeatedly called defendants' office during this time in order to clarify why he was being told by the PUC that he was uninsured. Lindsey was consistently told by one person or another at defendants' agency that he was covered and that there should be no problem with his insurance. However, in May of 1978 the PUC again informed Lindsey that he was operating his trucks without insurance. He was warned that if he continued to operate his trucks without insurance he would be fined. At about this time Lindsey received a letter from the agency that regulated transport through Quebec, informing him that his authorization to

drive his trucks through Quebec had been cancelled due to a lack of insurance. Unable to make his Quebec runs, Lindsey thereafter took his trucks off the road, and because he could not make payments on the trucks, sold two of his trucks and eventually ceased to operate as an independent trucker.

Lindsey's complaint against defendants consisted of one count alleging breach of contract and a second count alleging negligence. The gravamen of the complaint was that defendants forced Lindsey to abandon his independent trucking business. The case was tried only as to the single count of negligence.[1]

At the close of Lindsey's case, the defendants moved for a directed verdict in their favor; the motion was denied. The jury found for the plaintiff and awarded him $40,000 in damages. After denial of their motion for judgment notwithstanding the verdict, defendants brought this appeal.

### I.

In contending that they were not negligent or that if they were negligent, their negligence was not a proximate cause of damage to Lindsey, defendants rely on the fact that they had delegated to the Empire Insurance Company of Nebraska the responsibility for filing the various forms required for Lindsey's coverage with Quebec, Maine and other jurisdictions.[2] They argue that only the Empire Company was negligent in failing to file the necessary forms or, even if there was some negligence on their part, the loss of license and the damages flowing from that loss resulted exclusively from the negligence of the other companies.

A jury's finding of negligence and proximate cause will be vacated on appeal only if, viewing the evidence and all justifiable inferences therefrom in the light most

---

**1.** The claim for breach of contract apparently was not pursued and we consider it to have been abandoned.

**2.** At trial, the parties stipulated that Empire had the responsibility to make the proof of insurance filings with the PUC.

favorable to the prevailing party, the jury was clearly erroneous in its verdict. *True v. Ladner*, 513 A.2d 257, 265 (Me.1986); *Wyman v. Osteopathic Hosp. of Maine, Inc.*, 493 A.2d 330, 335 (Me.1985); *Blackman v. Jackson*, 458 A.2d 755, 756 (Me. 1983).

■ The defendants misapprehend the basis for Lindsey's claim, which was not solely the failure of the defendants to secure his insurance in a timely manner. In addition, plaintiff's claim is based on defendants' repeated and misleading representations to Lindsey that he was insured when, in fact, he was not. The defendants rely exclusively on their own testimony at trial in contending that the evidence as to their negligence is insufficient. However, Lindsey's testimony concerning the relevant events in this case, upon which the facts previously set forth are based, provided a sufficient basis for the jury's determination that the defendants were negligent and that this negligence was a substantial factor in causing Lindsey's loss of license and resulting damages. *Wing v. Morse*, 300 A.2d 491, 495–96 (Me.1973).

## II.

The defendants also argue that Lindsey's failure to seek alternative sources of insurance and his failure to attempt to arrange for alternative payment plans for his trucks demonstrate that Lindsey did not mitigate damages as he was obligated to do, and that because Lindsey could have reasonably avoided all of the damages he sought at trial, he was not entitled to any compensation for his alleged losses.

■ Generally, a plaintiff has a duty to use reasonable efforts to mitigate his or her damages. *See Schiavi Mobile Homes, Inc. v. Gironda*, 463 A.2d 722, 724–25 (Me. 1983); *Michaud v. Steckino*, 390 A.2d 524, 531 (Me.1978); *Isenman v. Burnell*, 125 Me. 57, 60–61, 130 A. 868, 870–71 (1925).

However, because mitigation is an affirmative defense, a defendant has the burden of showing that mitigation was feasible. *Kenaston v. School Administrative District #40*, 317 A.2d 7, 11 (Me. 1974); *Isenman*, 125 Me. at 60–61, 130 A. at 870.

■ The defendants did not present evidence at trial directly dealing with the issue of mitigation. The defendants do point to a portion of Lindsey's testimony concerning his willingness to pay additional premium moneys to secure insurance as evidence that he could have procured insurance with another company to secure coverage and get his business going again, minimizing his losses. Lindsey did testify that he would have been willing to pay additional premiums, but to the defendants. Lindsey also testified as to his reluctance to change insurance companies after all the paperwork had been done with the agency of defendants. The defendants, who had the burden of proving the feasibility of mitigation, failed to introduce evidence concerning alternatives available to Lindsey that would have compelled the jury to conclude that Lindsey failed to mitigate his damages.

## III.

We agree with defendants' last contention that the award of $40,000 in damages to Lindsey is excessive and not supported in the record. Lindsey testified that his lack of insurance led to a cancellation of his right to operate his trucking business in Canada, and that this resulted in an immediate loss of income to him, forcing him to abandon his business and sell his trucks in order to make payments to keep his third truck. He testified that this resulted in a maximum loss to him of $14,700.[3]

■ Although another factfinder might come to a different conclusion, we cannot say that as a matter of law such an economic loss as Lindsey testified he suffered

---

**3.** Lindsey testified that he was forced to sell a truck, valued at $12,000 to $15,000, for $5,000 and another truck, valued at $8,000, for $1,500, with a $1,800 mortgage assumed by the buyer.

was not proximately caused by defendants' negligence.[4]

Lindsey's evidence showed that in the period prior to the termination of his privilege to do business in Canada, he grossed an average of $8,000 per month and netted $3,000 per month. He testified that in the three to five month period after his trucks were not operating, he made $1,000. Although Lindsey later testified that he made $1,500 during the two month period following the cessation of his business, the jury is entitled to accept the evidence that for a five month period following the termination of his business, he lost $3,000 per month, less the $1,000 he testified he earned, or a total of $14,000. There is sufficient evidence in the record, therefore, to support a property damage loss of $14,700 and lost income of $14,000, or a total of $28,700. *Bourette v. Dresser Indus., Inc.*, 481 A.2d 170, 174 (Me.1984).

 However, Lindsey had the burden of proving his damages to a reasonable degree of certainty. *See Decesere v. Thayer*, 468 A.2d 597, 598 (Me.1983); *Dairy Farm Leasing Co., Inc. v. Hartley*, 395 A.2d 1135, 1138–39 (Me.1978). Because he produced insufficient evidence as to his activities or earnings after the five month period, any damages in excess of $28,700 are speculative, not "grounded on facts in evidence" and must be vacated. *King v. King*, 507 A.2d 1057, 1059 (Me.1986). We remand for a new trial on the issue of damages unless Lindsey remits all of the judgment in excess of $28,700. *See Boulet v. Beals*, 158 Me. 53, 61, 177 A.2d 665, 669 (1962); *Fairbanks v. Barker*, 115 Me. 11, 19, 97 A. 3, 6 (1916); *Howard v. Grover*, 28 Me. 97, 101 (1848).

The entry is:

Judgment vacated. Remanded to the Superior Court for a new trial on the issue of damages only, unless within 30 days after issuance of this court's mandate Lindsey

remits all of the judgment in excess of $28,700.

All concurring.

---

**4.** The plaintiff's claim for breach of contract, under which the damages may have been more limited, was not pursued by plaintiff. *See* 5 A. Corbin, *Corbin on Contracts* § 1019 (1964).