2000 ME 161

**COUNTY FOREST PRODUCTS, INC.**

v.

**GREEN MOUNTAIN AGENCY,
INC., et al.**

Supreme Judicial Court of Maine.

Argued April 5, 2000.
Decided Aug. 17, 2000.

Peter J. DeTroy, Esq., (orally), Russell B. Pierce Jr., Esq., Norman, Hanson & DeTroy, LLC, Portland, for plaintiff.

William W. Willard, Esq., (orally), Ronald W. Schneider Jr., Esq., Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for Green Mountain Agency.

Phillip D. Buckley, Esq., (orally), Brett A. Singer, Esq., Rudman & Winchell, LLC, Bangor, Samuel K. Rudman, Esq., Lambert, Coffin, Rudman & Hochman, Portland, Carol A. Griffin, Esq., Morrison, Mahoney & Miller, LLP, Boston, MA, for Sphere Drake and Terra Nova.

Frederick J. Badger, Esq., (orally), Mary F. Kellogg, Esq., Richardson, Whitman, Large & Badger, P.C., Bangor, for F.A. Peabody Co.

Panel: WATHEN, C.J., and CLIFFORD, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Green Mountain Agency, Inc., Sphere Drake Underwriting Management, Ltd., and Terra Nova Insurance Company, Ltd., appeal the judgment of the Superior Court (Aroostook County, *Pierson, J.*) in favor of County Forest Products, Inc., on its complaint and F.A. Peabody Company on its cross-claim. County Forest suffered a fire loss and filed this action against the insurance agencies and insurers alleging various claims arising from the nonpayment of the full amount of the fire insurance. Sphere Drake and Terra Nova, the insurers, appeal: (1) the court's conclusion that Green Mountain is their agent with apparent authority to act for them; (2) the court's reformation of the insurance contract; (3) the court's finding that the insurers and Green Mountain are estopped from denying increased coverage limits; (4) the award of consequential damages to County Forest; and (5) the summary judgment in favor of County Forest affirming an appraisal award. Green Mountain appeals: (1) the finding that it is secondarily liable for the amount owing under the insurance policy; and (2) the finding of joint and several liability for the consequential damages. Both the insurers and Green Mountain appeal: (1) the refusal of the court to reduce the judgment against them by the amount of the settlement between County Forest and Peabody; and (2) the award of damages to Peabody on Peabody's cross-claim. County Forest appeals the denial of its motion to add Galen Porter, Jr., its owner, as a plaintiff in the action. We affirm the judgment for County Forest in all respects except that we remand to the Superior Court to determine whether the judgment should be reduced by the amount of County Forest's settlement with Peabody. We vacate the judgment for Peabody on the cross-claim and remand the cross-claim to allow the Superior Court to resolve the apparent inconsistency arising from its judgment to Peabody on the cross-claim and its denial of Green Mountain's request to reduce the judgment to County Forest.

I. PARTIES

[¶ 2] The plaintiff is County Forest Products, Inc., a Maine corporation that operated a sawmill, a planing mill, and sold dimensional lumber at its place of business in Crystal. Galen Porter, Jr., is the president and sole owner of County Forest.

[¶ 3] F.A. Peabody Company, one of the defendants, is a Maine corporation with an office located in Houlton. It is in the business of selling and arranging for insurance. Peabody began obtaining insurance for Porter's businesses in the mid–1980s.

Peabody obtained the fire insurance policy for County Forest at issue in this case. The insurance agent employed by Peabody who obtained the insurance for County Forest is Scott Austin.

[¶ 4] Another defendant is Green Mountain Agency, Inc., a surplus and excess lines agency, which means that it procures insurance for customers with specialized risks who might not otherwise be able to obtain coverage through standard insurers. Green Mountain has an office in Vermont. In late 1994 and early 1995, Peabody arranged for the issuance of a fire insurance policy for County Forest through Green Mountain. The underwriter at Green Mountain with whom Peabody had contact is Thomas Palumbo, the vice-president of Green Mountain. Joseph Palumbo is the president of Green Mountain.

[¶ 5] Green Mountain arranged to have two insurers, with whom it had contracts, issue the fire insurance policy for County Forest. The two insurance companies, Sphere Drake Underwriting Management, Ltd., and Terra Nova Insurance Company, Ltd., are defendants, and both are located in England. Green Mountain dealt with the two insurers through an intermediary, Warren, Exall & Darby, located in England, who is not a party to this action.

## II. SUMMARY OF FINDINGS AND PROCEEDINGS

[¶ 6] County Forest sets forth two claims in its complaint against the insurers, Sphere Drake and Terra Nova. In count I it seeks reformation of the insurance contract, and in count II it claims that the insurers breached the insurance contract and the covenant of good faith and fair dealing. In count III County Forest claims that Green Mountain assumed a duty of obtaining an increase in the policy limits and breached that duty. In counts IV through VI the complaint alleges that Peabody breached its fiduciary duty as agent of County Forest; breached its contract with County Forest to procure insurance; and was negligent. The court

allowed County Forest to add count VII, an unfair claims practice count, pursuant to 24–A M.R.S.A. § 2436 (1990), *amended by* P.L.1999, ch. 256, § I–1, against all defendants. In response, the insurers counterclaimed alleging that the appraisal award should be vacated because the appraisal process was invalid. Peabody filed a cross-claim against Green Mountain and the insurers alleging that Green Mountain was negligent or breached a contract in failing to procure increased insurance coverage, and that the insurers, as principals, were liable for Green Mountain's negligence and breach of contract.

[¶ 7] The matter was tried to the court without a jury. As is set forth below, County Forest settled with Peabody before trial, but Peabody remained in the case to pursue its cross-claim against the insurers and Green Mountain. The court disposed of the appraisal award issue on a summary judgment motion immediately before trial.

[¶ 8] The court filed a thorough decision with detailed findings. The findings begin with a statement that County Forest proved that both the insurers and Green Mountain were guilty of "delay, incompetence, obfuscation, gross negligence, more delay and deliberate deception." The findings end with the "inescapable conclusion that the conduct of the insurers and [Green Mountain] was egregious" and their "obfuscation and delay" were, in the end, "self-defeating."

[¶ 9] The facts, as found by the court, which led to the lawsuit are as follows. Peabody arranged with Green Mountain for fire insurance for County Forest's sawmill in Crystal. Green Mountain provided fire insurance coverage for County Forest for calendar year 1995 through two insurers, Sphere Drake and Terra Nova. In February 1995, soon after the insurance policy had been issued, County Forest requested Peabody to obtain an increase in the liability limits of the policy. The request was to raise the limit on the sawmill

building from $300,000 to $510,000, and to increase the limit on the contents of the sawmill building from $320,000 to $720,000. Stephen Austin of Peabody requested the increased coverage to Green Mountain through both a telephone call and a faxed document, dated February 14, 1995. Austin spoke with Thomas Palumbo, who told Austin that there "should be no problem, should be fine."

[¶ 10] On June 21, 1995, the sawmill was damaged by a fire. Green Mountain was promptly notified of the fire loss. It denied that the insurance limits had been increased. The court found that after the fire, "Green Mountain began to work backwards." Thomas Palumbo testified that he had told Austin during the February telephone conversation that he did not have the authority to handle the increased limits and that only Joseph Palumbo, the president of Green Mountain, had that authority. Joseph Palumbo testified that he denied coverage and wrote notes to that effect on the February 14 fax from Austin. Other testimony indicated that such notes were not on the fax at the time that Green Mountain was notified of the fire. In spite of the testimony of Joseph Palumbo that the coverage was denied, Thomas Palumbo testified that he intended to pursue the request for increased limits, but he needed more information from Peabody and that he attempted to obtain it. The court found that Green Mountain never sent a notice to Peabody or County Forest refusing or declining the requested increase in the policy limits, nor did it contact Peabody for additional information, or communicate in any way with Peabody about the request. During the February telephone conversation, Austin and Thomas Palumbo discussed other changes to the policy that are not at issue in this case. Green Mountain made those other changes to the policy.

[¶ 11] The trial court concluded that the testimony of the Palumbos was not credible and that Green Mountain either waited until after the fire to deny the increased

coverage, or it "was grossly negligent in not pursuing coverage or issuing a written notice of denial of the increased coverage." The court determined that Green Mountain breached its duty to procure the requested increase in the policy limits and was estopped from denying the increased coverage.

[¶ 12] The trial court found that Green Mountain was an agent of the insurers, Sphere Drake and Terra Nova, with the apparent authority to bind the insurers. It held that Sphere Drake and Terra Nova are bound by the actions of Green Mountain and that the insurers are estopped from denying the increased coverage.

[¶ 13] After the fire, Green Mountain contracted with Claims Services of America to adjust County Forest's fire loss claim, and Claims Services, in turn, hired Northern Maine Adjusters, Inc. Northern Maine Adjusters was paid by Sphere Drake and Terra Nova for its service in adjusting the fire loss claim. Michael Henderson is a claims adjuster employed by Northern Maine Adjusters, who performed the adjustment work for Green Mountain and the insurers. He submitted low figures which came within the lower coverage limits of the initial insurance policy.

[¶ 14] County Forest hired the Alex N. Sill Adjustment Company to adjust its fire loss claim. George Hoffman was the Sill Company employee who adjusted the claim on behalf of County Forest. Hoffman calculated significantly higher amounts than those submitted by Henderson.

[¶ 15] The court found that Henderson "began the adjustment process with the goal of an adjustment of loss within the original limits of the policy." The court further found that whether Henderson "was acting at specific direction—which is clearly supported in the record—or whether [he] was acting under his own understanding of his obligation as an adjuster, his adjustment process was grossly sub-

standard and not conducted in a fair and good faith manner."

[¶ 16] As a result of the figures provided by Henderson, the insurers paid $428,825.52 to County Forest for the loss. The insurers also demanded utilization of the appraisal process provided in the insurance policy to settle disputes between the insured and insurers. The insurers named an appraiser, Dennis Cricones; County Forest named Hoffman; and these two appraisers agreed upon another independent appraiser, John Kidder, as the umpire. At the conclusion of the appraisal process Kidder issued an appraisal award of $452,367.57 for damages to the building and an amount in excess of $720,000, the increased insurance limit, for the building contents.

[¶ 17] Through their counterclaim, the insurers contested the appraisal award on the grounds that Hoffman was not disinterested. The court disposed of this issue on summary judgment concluding that the insurers waived their objection to the selection of Hoffman as County Forest's named appraiser.

[¶ 18] Following the bench trial and the submission of memoranda and proposed findings by the parties, the court granted judgment to County Forest on count I of the complaint and reformed the insurance policy to provide the higher limits. The court granted judgment to County Forest against Green Mountain, Sphere Drake, and Terra Nova on counts II and III but, following a post-judgment motion, it clarified this portion of the judgment. The court further found that County Forest was entitled to damages of $743,542.05, which is the amount of the appraisal award on the building ($266,553.57), plus the replacement cost of the plant electrical system ($185,814),[1] plus the policy limits on the contents ($720,000), less the sum already paid by the insurers ($428,825.52). In addition, the court found that County

Forest was entitled to consequential damages in the amount of $250,000 resulting from County Forest's forced sale of undamaged sawmill and planer equipment which the court found was a foreseeable loss. The court awarded additional consequential damages to County Forest in the amount of $124,025 plus per diem interest payments, representing the mortgage debt owed by County Forest to Katahdin Trust Company. The court also ordered the insurers and Green Mountain to pay County Forest accruing per diem interest and attorney fees owed by County Forest to a judgment creditor. The court declined to award County Forest any damages for lost business opportunity on the grounds that it was unable to determine any such loss without speculation. On the statutory unfair claims practice count, the court awarded County Forest attorney fees.

[¶ 19] Peabody settled County Forest's claim against it for $170,000 prior to the trial. Peabody remained in the case for purposes of its cross-claim against Green Mountain and the insurers. The court granted Green Mountain's motion to amend its answer to the cross-claim to add the defense of comparative negligence. The court found that Peabody was 15% at fault, and the court reduced Peabody's damages by $50,000 for its fault. The court noted that although Peabody was negligent it was not "tainted with deception, bad faith and delay . . . ." The court granted judgment to Peabody against Green Mountain and the insurers in the amount of $120,000.

[¶ 20] After trial, Green Mountain moved to amend the judgment and requested the court to reduce the judgment for County Forest in the amount of the settlement between County Forest and Peabody of $170,000, and by striking any damages owed by Green Mountain for the increased policy limits. The court denied

---

1. The parties stipulated that the electrical system cost was to be included within the building loss rather than the contents loss.

the request to reduce the judgment by the settlement amount, finding that the injury caused to County Forest by Peabody was different from the injury caused to County Forest by Green Mountain and the insurers. The court amended its judgment and ordered Green Mountain only secondarily liable on the $743,542.05, representing the insurance proceeds, but it found Green Mountain jointly and severally liable with the insurers for the consequential damages. The court clarified that the judgment on counts I (reformation) and II (breach of contract and covenant of good faith) were against the insurers only, and the judgment on count III (Green Mountain's breach of duty to procure increased limits) was as to Green Mountain only. The court also set the amount of attorney fees to be paid by the insurers to County Forest.

## III. AGENCY

[¶ 21] The insurers, Sphere Drake and Terra Nova, contend that Green Mountain was not their agent and that they are not bound by Green Mountain's actions. The trial court found that Green Mountain was the agent of the insurers with apparent authority to act on their behalf. The existence of an agency relationship is generally a question of fact, and we review a finding of agency for clear error. *See Steelstone Indus., Inc. v. North Ridge Ltd. Partnership*, 1999 ME 132, ¶ 12, 735 A.2d 980, 983.

[¶ 22] The trial court expressly relied upon 24–A M.R.S.A. § 2422 (2000) which states:

1. An agent authorized by an insurer, if the name of such agent is borne on the policy, is the insurer's agent in all matters of insurance. . . .

2. The authorized agent of an insurer shall be regarded as in the place of the insurer in all respects regarding any insurance effected by him. The insurer

is bound by his knowledge of the risk and all matters connected therewith. Omissions and misdescriptions known to the agent shall be regarded as known to the insurer and waived by it as if noted in the policy.

[¶ 23] In commenting on an earlier version of this statute, we said: "The undoubted purpose of that statute is to make it as safe for persons seeking insurance to 'deal with the agents, with whom alone they ordinarily transact their business, as if they were dealing directly with the companies themselves.'" *Hurd v. Maine Mut. Fire Ins. Co.*, 139 Me. 103, 113, 27 A.2d 918, 924 (1942) (quoting *LeBlanc v. Standard Ins. Co.*, 114 Me. 6, 11, 95 A. 284, 285 (1915)).

[¶ 24] The insurance policy issued to County Forest contains, on the covering page of the policy, the names of both insurers as well as the name of Green Mountain. Because "the name of such agent is borne on the policy," Green Mountain is the "agent in all matters of insurance" and "shall be regarded as in the place of the insurer in all respects regarding any insurance effected by [it]." 24–A M.R.S.A. § 2422(1), (2). The trial court did not err in finding that Green Mountain was the agent of the insurers.[2] Because Green Mountain is the agent of the insurers, its actions are binding on the insurers. *See Utica Mut. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 519 A.2d 185, 186 (Me. 1986) (holding that insurer is responsible for acts of its agents); *Tracey v. Standard Accident Ins. Co.*, 119 Me. 131, 135, 109 A. 490, 491 (Me.1920) (holding that insurer is charged with knowledge of its agent).

## IV. POLICY LIMITS

[¶ 25] When it received notice of County Forest's fire loss, Green Mountain denied that the coverage limits of the policy had been increased. The trial court

2. The insurers argue that section 2422 should not apply where the agent is a surplus and excess lines wholesale broker. They neither cite authority nor present a rationale for this proposition.

found that when Peabody requested the increased coverage in February 1995, Green Mountain represented that increasing the policy limits to the amount requested was "no problem," and Green Mountain never communicated otherwise to Peabody or County Forest. The court further found "that the standards in the insurance industry would require a written letter of declination had Green Mountain decided not to increase the coverage." For this reason, the court found that Green Mountain was estopped from denying the increase in the policy limits. Because Green Mountain was the agent for the insurers, the insurers were likewise estopped from denying the increased coverage.

■ [¶ 26] To assert equitable estoppel in an insurance contract, an insured must prove two elements: (1) unreasonable conduct by the insurer which misleads the insured concerning the scope of coverage; and (2) justifiable reliance by the insured upon the conduct of the insurer. *See Roberts v. Maine Bonding and Cas. Co.*, 404 A.2d 238, 241 (Me.1979).

[¶ 27] Here there is ample competent evidence to support the court's application of equitable estoppel. Green Mountain, through its vice-president Thomas Palumbo, specifically told Austin that the increase in coverage would not be a problem. Green Mountain took no further action to tell Peabody or County Forest that the increased limits could not be effectuated, thereby allowing Peabody and County Forest to rely on Green Mountain's implied assertion that the increased limits would go into effect. Because of the standard in the insurance industry requiring written declination, Peabody and County Forest were justified in relying on Green Mountain's representation. *See Depositors Trust Co. v. Farm Family Life Ins. Co.*, 445 A.2d 1014, 1019 (Me.1982) (holding that insurer's unreasonable delay in processing insurance is sufficient to estop insurer from denying coverage because the insurance applicant is preempted from seeking insurance elsewhere).

[¶ 28] The insurers argue that the court erred in finding estoppel because there was no misleading conduct. The obvious misleading conduct· of Green Mountain that is attributed to the insurers is the affirmative representation that the increase in the limits would be "no problem." The insurers also argue that there was no justifiable reliance because Peabody knew it should receive confirmation in writing from Green Mountain that the increased limits had been effected. The court, however, found that the practice in the industry was that the limits would be increased unless the insurer notified the insured otherwise. There is competent evidence in the record to support the court's finding of estoppel, and we will not disturb it.

[¶ 29] The trial court also determined that the evidence was sufficient to allow a reformation of the insurance contract to include the increased limits. We need not reach the issue of whether reformation was appropriate in this case because the determination of estoppel accomplishes the same purpose.

## V. APPRAISAL AWARD

[¶ 30] As required by 24–A M.R.S.A. § 3002 (2000), the insurance policy between County Forest and the insurers contained the following clause:

**Appraisal.** In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value

and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

[¶ 31] Pursuant to this clause, the insurers selected Cricones as their disinterested appraiser. County Forest notified the insurers that it had selected Hoffman. The insurers' attorney wrote to the attorney for County Forest stating that "the insurers are willing to accept a representative of the Alex N. Sill Company as the assured's appraiser in this matter, in order to facilitate the appraisal process. The insurers' acceptance of [County Forest's] nominee shall not be construed as a waiver of any of the terms of the involved policy." Cricones and Hoffman selected Kidder as the umpire. The appraisal process, which began in February 1996 with the nominations of Cricones and Hoffman, concluded a year later with the award.

[¶ 32] In its counterclaim, the insurers challenge the appraisal award on the ground that County Forest's appraiser was not disinterested. The parties filed cross-motions for summary judgment on this issue, and the court granted summary judgment for County Forest. The court found that the appraisal process was valid and that the insurers waived their objection to County Forest's appraiser.[3] We review the grant of a summary judgment for errors of law, and we independently examine the record to determine if a genuine issue of material fact exists. *See Nevin v. Union Trust Co.*, 1999 ME 47, ¶ 5, 726 A.2d 694, 696.

[¶ 33] Although the insurers contend that the issue of waiver is factual and must be submitted to the factfinder, a review of the statements of material facts reveals no factual dispute. A letter from the attorney for the insurers to the attorney for County Forest, at the time Hoffman was selected by County Forest, states that the insurers believe that Hoffman's employer, the Sill Company, has "a direct pecuniary interest in the outcome of the appraisal" and is not, for that reason, "disinterested." Nonetheless, the letter states, "We have been instructed to advise you, however, that the insurers are willing to accept a representative of the Alex N. Sill Company as the assured's appraiser in this matter, in order to facilitate the appraisal process." Although the letter goes on to say that the acceptance of Hoffman should not be construed as a waiver of the terms of the policy, the insurers' specific agreement to accept Hoffman must be construed as a waiver of any objection to Hoffman's participation.

[¶ 34] The appraisal award was not to the insurers' liking, and they claim that they can now object on the basis that the Sill Company had an interest in the outcome of the appraisal. By agreeing to proceed with the appraisal process and accepting County Forest's representative in spite of knowledge of a possible interest by the Sill Company, the insurers waived their right to object to the appraisal award on that basis. The court did not err in upholding the appraisal award.

**3.** There is some dispute as to whether the court concluded that Hoffman was disinterested. When the trial judge ruled on the summary judgment motion from the bench at the start of the trial, the judge said that he was "prepared to rule on the motion for summary judgment as a matter of law that the appraisal process is valid and that there is both a waiver and that the representative of the plaintiff was not disinterested." The attorney for County Forest asked the judge if he meant to say that Hoffman was disinterested, but the question was not answered. It appears from the use of the word "both" in the above quotation that the judge misspoke and intended to say that the appraisal process was valid for two reasons: (1) waiver, and (2) Hoffman was disinterested. Nonetheless, because we conclude that the insurers waived their objection to the appraisal process, we do not reach the issue of whether Hoffman was disinterested.

## VI. FINDING OF BAD FAITH

◼ [¶ 35] The court found that the insurers acted in bad faith thereby breaching the implied covenant of good faith and fair dealing. Specifically, the court found that Henderson, who was acting as the agent of the insurers in adjusting the loss, adjusted the loss with the goal of coming within the lower policy limits and that his adjustment was "grossly substandard and not conducted in a fair and good faith manner." This factual finding is supported by the record.

◼ [¶ 36] In addition, the court found bad faith because of the failure of the insurers to pay the appraisal award. *See* 24–A M.R.S.A. §§ 2436(1) (requiring insurer to pay undisputed fire loss claims or dispute claim in writing within sixty days) and 3002 (requiring that contracts provide that payment is due within sixty days of appraisal award). The court, relying on sections 2436 and 24–A M.R.S.A. § 2436–A (1990), *repealed and replaced by* P.L.1997, ch. 621, § 1, ordered the insurers to pay County Forest's attorney fees because of their failure to pay the appraisal award when due. It is not disputed that the insurers neither paid the appraisal award nor did they dispute the appraisal award within sixty days of its issuance.[4] The court did not err in its finding that the insurers acted in bad faith.

## VII. DAMAGES OWED BY INSURERS

◼ [¶ 37] The court found that the insurers breached the insurance contract with County Forest by not paying County Forest for its fire loss. Because the court found a breach and also found that the insurers acted in bad faith, thereby breaching the covenant to deal fairly and in good faith, the court was faced with the task of determining damages. The damages that flowed directly from the breach of the insurance contract were readily determined by the appraisal award and the policy limits. This amount was $743,542.05, which is the sum of the appraisal award on the building ($266,553.57), the replacement cost of the plant electrical system ($185,814), and the policy limits on the contents ($720,000), less the amount already paid by the insurers ($428,825.52).

[¶ 38] County Forest requested consequential damages. The court found that County Forest was forced to sell its undamaged sawmill and planer equipment. The evidence discloses that when County Forest received the $428,825.52 payment from the insurers in December 1995, it paid several creditors. It still owed approximately $550,000 to Katahdin Trust on a mortgage and $70,000 to a judgment creditor. The court impliedly found that if County Forest had received the amount owing under the appraisal award, in a timely fashion, it would have been able to pay its creditors. Because of the delay, it was forced to hold an auction of the undamaged equipment. The court concluded that the forced sale resulted in a loss to County Forest of $250,000.[5] The court also awarded County Forest consequential damages representing the interest payments owed to Katahdin Trust by County Forest and interest payments and attorney fees which were the result of a lawsuit by a creditor against County Forest.

[¶ 39] The insurers argue that County Forest had financial difficulties before the fire and these damages were a result of those difficulties and not the result of the fire or the delay in payment of the insurance proceeds. Although the court heard testimony and received documents regarding County Forest's financial situation be-

---

4. There is no merit to the insurers' argument that they did not have to dispute the award because this litigation was pending.

5. The court did not make explicit findings as to the value of the undamaged equipment.

There was evidence from which the court could have found that the value of the undamaged equipment was approximately $360,000, and the proceeds from the sale were approximately $72,000.

fore the fire and the debts that it owed at that time, the court was not compelled to find from that evidence that County Forest would have been forced to liquidate its equipment or would have been unable to pay its creditors even without the fire and delay in payment of the insurance proceeds. The record amply supports the court's findings of consequential damages resulting from the forced sale as well as the interest payments and other costs owing to the creditors.[6]

## VIII. DAMAGES OWED BY GREEN MOUNTAIN

[¶ 40] In the amended judgment, the court clarified that Green Mountain was jointly and severally liable with the insurers for the consequential damages resulting from the forced sale of the undamaged equipment and the interest and attorney fees owing to creditors. With regard to the $743,542.05 in insurance proceeds, the court held that the insurers are primarily liable and Green Mountain is secondarily liable.[7]

### A. Green Mountain's Liability

[¶ 41] Green Mountain disputes that it is liable for any of the damages. It argues that it cannot be held responsible on a breach of contract theory because the contract is the insurance policy, and it was not a party to the insurance contract. County Forest argues that the court did not premise its finding of Green Mountain's liability on the basis of breach of the insurance contract. The trial court stated that Green Mountain "breached its duty to procure the requested increase" in policy limits. County Forest did not specifically plead tort or contract theories of liability, nor did the court expressly use the words

"contract" or "tort" in its discussion of Green Mountain's liability.

[¶ 42] If the cause of action against Green Mountain is construed as one for breach of the insurance contract, Green Mountain would not be liable. When an agent is not a party to a contract between the principal and a third party, the agent is not liable to the third party for a breach of that contract. *See Mueller v. Penobscot Valley Hosp.*, 538 A.2d 294, 299 (Me.1988) (finding hospital administrator who was not a party to contract between hospital and employee not liable for breach). However, it may be possible to construe the cause of action against Green Mountain as one sounding in contract in which the contract is one to procure insurance and the parties to the contract are Green Mountain and Peabody or County Forest. *See Bates v. Anderson,* 614 A.2d 551, 552 (Me.1992) (upholding jury verdict for prospective insured against insurance agent for breach of agent's contract with insured to procure flood insurance); *Miller v. Liberty Ins. Co.*, 161 Me. 438, 443, 213 A.2d 831, 833 (1965) (same). Under this theory, Green Mountain, as a party to the contract to procure insurance, is liable for its breach.

[¶ 43] Cases in which an insurance agent has breached a duty to procure insurance generally refer to the cause of action as one for negligence. In *McAlvain v. General Ins. Co. of America,* 97 Idaho 777, 554 P.2d 955 (1976), the court surveyed authorities and cases from other jurisdictions and concluded that an insurance agent who fails to procure complete coverage can be liable in tort or contract. *See id.* at 958. The *McAlvain* court held that an insurance agent who performs negligently is

---

6. Neither the insurers nor Green Mountain appear to dispute the amount of damages; instead they dispute their liability for any damages at all. With regard to the amount of damages we note that the assessment of damages is the sole province of the factfinder, and we will not vacate the award unless there is no basis in the record for it. *See VanVoorhees v. Dodge,* 679 A.2d 1077, 1081 (Me.1996).

The evidentiary record supports the damages found by the trial court.

7. County Forest has not appealed the finding of the secondary liability of Green Mountain nor requested that the liability be joint and several.

liable for that negligence. *See id.* at 959. The court affirmed the jury verdict against the agent and noted that the insurer's liability for its agent's negligence was not in issue, but "an agent can always be held personally liable for his own negligence under ordinary torts principles." *Id. See also Joseph Forest Prods., Inc. v. Pratt,* 278 Or. 477, 564 P.2d 1027, 1029 (1977) (referring to the action as one for breach of contract to procure insurance and for negligence in failing to procure insurance and stating that liability may be based on either or both); *Appleton Chinese Food Serv., Inc. v. Murken Ins., Inc.,* 185 Wis.2d 791, 519 N.W.2d 674, 678 (Ct.App.1994) (stating that an agent may be "liable in tort" to the insured for failing to procure insurance).

[¶ 44] Whether we view the failure to procure the insurance as a breach of a contract or as a tort, there is sufficient authority for the proposition that Green Mountain is liable for failing to procure the requested insurance. In a case where an insurance agent neglected to increase the coverage limits on a fire insurance policy after being requested to do so by the insured, we said: "It is the law in Maine that when an insurance broker or agent undertakes to provide insurance for another but fails to do so, the agent is liable in the amount that would have been due if the policy had been obtained." *Bramson v. Chester L. Jordan & Co.,* 379 A.2d 730, 732 (Me.1977). *See also McAlvain,* 554 P.2d at 959 (affirming judgment against insurance agent for negligent failure to obtain requested coverage); *Joseph Forest Prods.,* 564 P.2d at 1029–30 (holding that insurance agent is liable for failure to obtain fire insurance and vacating denial of consequential damages); *Appleton Chinese Food,* 519 N.W.2d at 678 (affirming liability of insurance agent, following settlement by insured with insurer, for failure to procure insurance); RESTATEMENT (SECOND) OF

AGENCY §§ 217B, 359C (1958) (an action may be brought jointly against a principal and agent for the tortious conduct of the agent). The trial court did not err in holding Green Mountain liable for failing to procure the increased insurance limits.

**B. Green Mountain's Secondary Liability for Insurance Proceeds**

◼ [¶ 45] Green Mountain contends that its only malfeasance was the failure to obtain the increased coverage limits, and once the court construed, either on a reformation or an estoppel theory, the insurance contract as containing the increased coverage, the situation was the same as if it had procured the increased coverage. It cites several cases for the proposition that an insurance agent is not liable for damages for failing to procure a policy when a court construes the policy as requested and finds the insurer liable. One of those cases neither cites authority nor offers reasoning as to why it held that the claim against the agent for negligence should have been dismissed. *See John Hancock Mut. Life Ins. Co. v. McNeill,* 27 Ariz.App. 502, 556 P.2d 803, 809 (1976).[8] Green Mountain also relies on *Trible v. Tower Ins. Co.,* 43 Wis.2d 172, 168 N.W.2d 148 (1969), in which the court held that an insured was not entitled to recover both on his contract action against the insurer and his tort action against the agent. The *Trible* case has been distinguished by *Appleton Chinese Food,* 519 N.W.2d at 679, on the basis that *Trible* invoked the doctrine of election of remedies, and because the purpose of the doctrine is to prevent double recovery, the doctrine is not applicable when there is no threat of a double recovery. *See also Zubek v. Edlund,* 228 Wis.2d 783, 598 N.W.2d 273, 276 (Ct.App. 1999) (holding that insured's settlement with insurer did not preclude negligence

---

**8.** Another case relied on by Green Mountain also cites no authority but reasons that the cause of action against the insurance company for breach of contract and the negligence

claim against the agent are inconsistent and mutually exclusive. *See Durbin Paper Stock Co. v. Watson–David Ins. Co.,* 167 So.2d 34 (Fla.Dist.Ct.App.1964).

claim against insurance agent for failure to procure insurance).

[¶ 46] Green Mountain urges us to apply the election of remedies doctrine and argues that it is inconsistent to hold Green Mountain liable for failing to procure the increased limits and hold the insurers liable for the increased limits. We disagree and find no inconsistency. The insurers are liable to pay the proceeds of the insurance policy up to the increased limits because they are estopped from denying the higher limits due to the actions of their agent, Green Mountain. Green Mountain is independently liable for breach of its duty to procure the increased limits. "The fundamental purpose, of the doctrine of election of remedies is to prevent double recovery for a single wrong or injury." ANDREW M. HORTON & PEGGY L. McGEHEE, MAINE CIVIL REMEDIES § 2–3 at 23 (3d ed.1996). In this case there is no possibility of a double recovery; County Forest cannot collect the entire judgment from both the insurers and Green Mountain; it is entitled to be made whole only once. The election of remedies doctrine is inapplicable. We see no justifiable basis to release Green Mountain from secondary liability for the insurance proceeds simply because the insurers are estopped from denying the increased coverage limits.[9]

C. Green Mountain's Liability for Consequential Damages

[¶ 47] Green Mountain further argues that it should not be liable for any of the consequential damages that were caused by the bad faith refusal of the insurers to pay the increased coverage amount. It contends that the consequential damages were not the proximate result of Green Mountain's actions and were not foreseeable.

[¶ 48] Green Mountain is responsible for the damages its conduct proximately caused. It told Peabody that it would obtain the increased coverage. It did nothing further to indicate that the increased coverage was declined, thereby causing Peabody and County Forest to assume that the increased coverage was in effect. When the fire occurred, instead of recognizing that it had failed to procure the increased coverage and had failed to so notify Peabody, it persisted in denying increased coverage. At one time it asserted that it had decided to deny the increased coverage, and at another time it said it tried to obtain additional information from Peabody in order to effectuate the increase. The court found Green Mountain made no attempt to obtain additional information from Peabody.

[¶ 49] The trial court implicitly found that the refusal of the insurers to pay the increased policy limits and the specific direction of the insurers to its adjuster to arrive at an adjustment within the lower policy limits were caused by the refusal of Green Mountain to acknowledge that it neglected to obtain the increased coverage. This leads to the conclusion that Green Mountain's failure to acknowledge its error directly led to the nonpayment of the increased coverage limits by the insurers and was the cause of the consequential losses sustained by County Forest.[10] Green Mountain's failure to pro-

9. Green Mountain also argues that it should not be held secondarily liable for the insurance proceeds because it was not allowed to introduce evidence at the trial as to the amount of the loss suffered by County Forest in the fire. Green Mountain, however, made no offer of proof at trial as to the evidence it wanted to present. Given this failure. Green Mountain cannot now be heard to complain about the exclusion of such evidence. *See* M.R. Evid. 103(a)(2); *In re Shulikov*, 2000 ME 70, ¶ 13, 749 A.2d 1270, 1273 (stating

that without an offer of proof, party could not demonstrate prejudice from exclusion of evidence); *Gaynor v. McEachern*, 437 A.2d 867, 870 (Me.1981) (holding that if no offer of proof is presented, trial court's ruling on exclusion of evidence will not be disturbed).

10. This same rationale applies to Green Mountain's contention that even if it is secondarily liable for part of the insurance proceeds, it is not responsible for the full amount because it procured a contract for part of the

cure the requested insurance and failure to admit its error after the fire do not have to be the sole cause of County Forest's consequential loss in order for Green Mountain to be liable for such consequential damages. There may be more than one proximate cause, and Green Mountain's conduct only needs to be a substantial cause of the damages. *See Wheeler v. White,* 1998 ME 137, ¶10, 714 A.2d 125, 127–28.

[¶ 50] In *Lindsey v. Mitchell,* 544 A.2d 1298 (Me.1988), we noted that the plaintiff's claim against the insurance agent was not limited to the agent's failure to procure insurance, but it was also based upon the agent's repeated representations to the plaintiff that the insurance was in effect. We affirmed the jury's finding of the agent's negligence and the finding that the agent's actions proximately caused the plaintiff's loss of a commercial driver's license which caused the loss of his trucking business. *See id.* at 1301. We affirmed the award of damages for loss of business and for the forced sale of the plaintiff's trucks. *See id.* at 1301–02. As in *Lindsey,* County Forest's claim against Green Mountain, as it was presented to the court, was not limited to failure to procure insurance, but extends to all of Green Mountain's actions. Green Mountain's failure to procure the increased insurance coverage before the fire, its refusal to acknowledge its error after the fire, and its obfuscation of its actions, all contributed substantially to County Forest's consequential damages.

[¶ 51] With regard to the foreseeability of the consequential damages, it is possible that the consequential damages were not foreseeable at the time Green Mountain failed to procure the increased coverage, but they were foreseeable and readily capable of identification after the fire and during the time Green Mountain persisted in its actions of obfuscation and delay. The court did not err in concluding that

Green Mountain was jointly and severally liable for the consequential damages with the insurers.

## IX.  REDUCTION OF JUDGMENT AND PEABODY'S CROSS-CLAIM

■ [¶ 52] As we noted, County Forest and Peabody settled the claims against Peabody before trial for the sum of $170,-000. In its motion to amend the judgment, Green Mountain requested that this sum be applied as a credit on the amount of the judgment owing by it to County Forest. Green. Mountain and the insurers argue that the claim against Peabody was the same as the claims against them. The trial court, however, found that the damage awards against the insurers and Green Mountain are "not for the same injury" as the settlement paid by Peabody. For this reason, the court declined to credit Green Mountain and the insurers with the $170,000 paid by Peabody to County Forest.

[¶ 53] Peabody filed a cross-claim against the insurers and Green Mountain alleging that it requested Green Mountain to increase the insurance coverage, that Green Mountain was negligent or breached a contract in failing to procure the increased coverage, and that the insurers, as principals, were liable for Green Mountain's negligence and breach of contract. Peabody further alleged that if it was liable to County Forest, then Green Mountain and 'the insurers were liable to Peabody for any damages paid by Peabody to County Forest. Green Mountain raised a defense of comparative negligence to the cross-claim. The court found that Peabody had been negligent in failing to inquire about premiums owing for the increased coverage and in failing to pursue an amended declarations page showing the increased coverage. The court found that

---

·insurance coverage. If Green Mountain's only malfeasance was the failure to procure the increased limits, this argument would carry some weight. The court, however, looked at the entire scope of Green Mountain's actions, including its obfuscation of the policy limits after the fire.

Peabody was 15% at fault. The court reduced Peabody's damages of $170,000 (the settlement sum) by $50,000, as a just and equitable sum for Peabody's own negligence, and granted judgment for Peabody against Green Mountain and the insurers in the amount of $120,000. The end result of the trial court's judgment is that County Forest receives $170,000 from Peabody; it collects $743,542.05 on the insurance policy (from the insurers primarily and Green Mountain secondarily); it obtains the remainder of the damages from either Green Mountain or the insurers (joint and several liability); and Peabody is owed $120,000 from Green Mountain and the insurers.

[¶ 54] In deciding not to reduce the judgment owing by Green Mountain and the insurers by the settlement amount and in granting judgment to Peabody on its cross-claim, the trial court made what appears to be inconsistent and unreconcilable findings. It found that the damages to County Forest caused by Peabody and the damages to County Forest caused by Green Mountain and the insurers were "not for the same injury." Nonetheless, it found that Green Mountain and the insurers contributed to the loss incurred by Peabody: Either Peabody's settlement with County Forest was for a separate and distinct injury that it caused County Forest or the settlement was for the same, or part of the same, injury caused by Green Mountain and the insurers. If the former is correct, then Green Mountain and the insurers should not have to contribute to Peabody for the damages caused solely by Peabody. If the latter is true, Green Mountain and the insurers are entitled to have the judgment against them reduced by the settlement amount as required by 14 M.R.S.A. § 163 (1980).[11] Because the trial court's findings on the issue of the reduction of the judgment and the cross-claim appear inconsistent, we remand these two issues to the court. The trial court is in a better position than an appellate court to clarify its findings. It may be able to reconcile the apparent inconsistency and articulate why Green Mountain and the insurers should pay Peabody on its cross-claim as well as pay County Forest the full amount of the judgment with no reduction for the settlement. If it cannot reconcile the apparent inconsistency, it will have to modify the judgment.

[¶ 55] We do not anticipate that the trial court will need to hold a further evidentiary hearing. Rather, we anticipate that, on the record already produced, the trial court will clarify the inconsistent findings and, if necessary, modify the judgment accordingly.

## X. COUNTY FOREST'S MOTION TO ADD ANOTHER PLAINTIFF

[¶ 56] County Forest sought to amend its complaint by adding Porter, the owner of County Forest, as a plaintiff. We do not reverse a decision of the trial court denying a motion to amend a pleading unless the moving party "clearly demonstrates a manifest abuse of discretion and the necessity to grant the motion to prevent injustice." *Falvo v. Pejepscot Indus. Park, Inc.,* 1997 ME 66, ¶ 12, 691 A.2d 1240, 1243.

[¶ 57] According to County Forest, Porter was harmed by the actions of the defen-

11. 14 M.R.S.A. § 163 reads:

Whenever a person seeks recovery for a personal injury or property damage caused by 2 or more persons, the settlement with or release of one or more of the persons causing the injury shall not be a bar to a subsequent action against the other person or persons also causing the injury.

Evidence of settlement with a release of one or more persons causing the injury shall not be admissible at a subsequent tri-

al against the other person or persons also causing the injury. After the jury has returned its verdict, the trial judge shall inquire of the attorneys for the parties whether such a settlement or release has occurred. If such settlement or release has occurred, the trial judge shall reduce the verdict by an amount equal to the settlement with or the consideration for the release of the other persons.

dants because he personally guaranteed loans of County Forest and is now liable for those loans. County Forest asserts that actions of the defendants effectively stopped County Forest from earning income which would have paid the loans.

[¶ 58] The court denied the motion because it found that Porter had no interest that was not already sufficiently protected by County Forest and, because the motion came seventeen months after the complaint was filed, it would result in added delay and expense. County Forest has failed to demonstrate how the denial of the motion leads to injustice. It has not shown what damages Porter has suffered that would not be covered by its own request for damages. Furthermore, the court would have been within the bounds of its discretion in denying a motion to add a new party on the grounds of delay and expense alone, given that the motion was not made until almost a year and a half after the case began.

The entry is:

The judgment for County Forest against Green Mountain, Sphere Drake, and Terra Nova is vacated solely for the purpose of permitting the Superior Court, on remand, to determine whether the judgment should be reduced by the amount of the settlement with Peabody, and, in all other respects, the judgment is affirmed. The judgment for Peabody on the cross-claim is vacated, and the cross-claim is remanded to the Superior Court for further proceedings consistent with this opinion. The case is also remanded for the determination of attorney fees and costs associated with this appeal pursuant to 24-A M.R.S.A. § 2436-A(1).